4wh445
131  207
4wh445
178  306

[PHILADELPHIA, APRIL 20TH, 1839.]

## HOOVER *against* THE SAMARITAN SOCIETY.

IN ERROR.

1. A power to revoke uses, and to appoint and declare new ones, may be executed by one and the same instrument, unless the deed creating the power expressly require that the same should be effected by means of distinct instruments.

2. A married woman having a power of appointment for her separate use and disposal, may execute the same for the benefit of her husband.

3. A deed conveying certain real estate in trust for A., a married woman, contained a proviso declaring that it should be lawful for her notwithstanding coverture, by any deed or deeds to be by her signed and sealed in the presence of two or more witnesses, to revoke all or any of the uses, &c. and to declare new and other uses of the same, as to her might seem proper, and that after the said uses, &c. should be so revoked, &c. it should be lawful for her by any deed or deeds, &c. under her hand and seal attested as aforesaid, to grant, bargain and sell, dispose of and convey the premises to any person or persons, &c. either absolutely, or by mortgage to secure the payment of such sum and sums as she might from time to time borrow for her own separate use and disposal, &c. A., with her husband, by indenture of mortgage, duly signed, sealed and witnessed, reciting the power, and that she had borrowed a certain sum of money, for which the husband had given bond, revoked the former uses, and by the same instrument appointed the premises to be held for the use of the mortgagee, &c. : *Held,* 1. That the power was well executed in respect to the instrument. 2. That it was not a valid objection to the execution, that the money was borrowed by the husband for his own use, and not for the separate use of A.

ERROR to the District Court for the City and County of Philadelphia.

The Samaritan Beneficial Society of the city of Philadelphia, brought a writ of *scire facias* in the Court below, against William Hoover and Barbara his wife, on a mortgage given by the defendants to John Stillé, and assigned to the plaintiffs.

A copy of the mortgage was filed in pursuance of the Act of Assembly, as follows :

" THIS INDENTURE, made the seventh day of December, in the year of our Lord one thousand eight hundred and twenty-seven, between William Hoover of the city of Philadelphia, upholsterer, and Barbara his wife, late Barbara Bradshaw, of the one part, and

(Hoover *v.* Samaritan Society.)

John Stillé, of the said city, gentleman, of the other part: WHEREAS, Philip Justus and Elizabeth his wife, by indenture, dated the thirty-first day of January, Anno Domini, one thousand eight hundred and twenty-five, recorded in Deed book G. W. R., No. 1, page 679, &c., did grant and convey unto Samuel Asay, the elder, his heirs and assigns, a certain two-story brick messuage or tenement, and lot or piece of ground, situate on the north side of Sassafras street, between Delaware Ninth and Tenth streets, in the city of Philadelphia, containing in breadth, east and west, seventeen feet, and in length or depth ninety-two feet, bounded westward by ground now or late of Matthias Bealart, northward and eastward by ground late of Jacob Morgan deceased, and southward by Sassafras street aforesaid, together with the appurtenances, to hold to him the said Samuel Asay, his heirs and assigns in trust nevertheless to, for and upon the several uses, intents and purposes that are in and by the said recited indenture mentioned, expressed, limited and declared of and concerning the same: And in and by the said recited indenture, it is provided and expressly understood and agreed by and between the parties thereto, that it should and might be lawful for the said Barbara Bradshaw, now the said Barbara Hoover, at any time or times thereafter during her natural life, notwithstanding her then present or any future coverture, or whether she be covert or sole, by any deed or deeds, writing or writings, to be by her signed and sealed in the presence of two or more credible subscribing witnesses, to revoke, alter, change and make void all and every or any the uses, trusts and estates therein before limited, expressed and declared of and concerning the premises thereby granted and conveyed, or any part thereof, and to declare new and other uses of the same as to her might seem proper; and that after the said uses, trusts and estates should be so revoked, altered, changed and made void, it should and might be lawful for the said Barbara Bradshaw, notwithstanding any coverture, or whether she be covert or sole, by any deed or deeds, conveyance or assurance in the law under her hand and seal, to be attested as aforesaid, to grant, bargain, sell, dispose of and convey the messuage, lot and premises aforesaid, with the appurtenances, to any person or persons whomsoever, his, her or their heirs and assigns for ever, either absolutely in fee simple, or conditionally, and in the nature of a mortgage or mortgages, to secure the payment of all such sum and sums of money as the said Barbara Bradshaw might from time to time think proper to take up and borrow for her own separate use and disposal, with interest therefor; any thing in the said recited Indenture contained to the contrary notwithstanding: AND WHEREAS, the said Barbara Hoover has taken up and borrowed from the said John Stillé the sum of one thousand dollars, (for which the said William Hoover has this day given his bond or obligation, payable in one year from the date hereof, together with lawful interest, to be paid half yearly for the

(Hoover v. Samaritan Society.)

same :)   Now THIS INDENTURE WITNESSETH, that the said Barbara Hoover, in pursuance of the power and authority for that purpose in her vested in and by the said above recited Indenture hath, and by these presents doth alter and change the uses, trusts and estates in and by the said Indenture mentioned, expressed and declared, and doth hereby direct and appoint that the said Samuel Asay, his heirs and assigns shall hold the messuage, lot and premises aforesaid in trust to the use and benefit of the said John Stillé, his heirs and assigns : And this Indenture further witnesseth, that the said Barbara Hoover further, in pursuance of the power and authority in her vested in and by the said recited Indenture, and in consideration of the aforesaid debt or sum of one thousand dollars and the better securing the payment thereof, with lawful interest, unto the said John Stillé, his executors, administrators and assigns, in discharge of the obligation above recited, and also in consideration of the sum of one dollar unto her in hand paid by the said John Stillé at the time of the execution hereof, the receipt whereof is hereby acknow-ledged, hath granted, bargained, sold, released and confirmed, and by these presents doth grant, bargain, sell, release, and confirm unto the said John Stillé, his heirs and assigns, all that the aforesaid two-story brick messuage or tenement, and lot or piece of ground, con-taining in front seventeen feet, and in length or depth ninety-two feet, situate, bounded and being as herein before particularly mentioned and described ; together with all and singular the buildings, im-provements, ways, alleys, passages, waters, water-courses, rights, liberties, privileges, hereditaments and appurtenances whatsoever thereunto belonging or in any wise appertaining, and the reversions, remainders, rents, issues and profits thereof ; to have and to hold the said messuage or tenement and lot or piece of ground above described, hereditaments and premises hereby granted or mentioned and intended so to be with the appurtenances unto the said John Stillé, his heirs and assigns, to and for the only proper use and behoof of the said John Stillé, his heirs and assigns for ever : Pro-vided always, nevertheless, that if the said William Hoover or the said Barbara Hoover, their heirs, executors, administrators or assigns do, and shall well and truly pay, or cause to be paid unto the said John Stillé, his executors, administrators or assigns, the aforesaid debt or sum of one thousand dollars, on the day and time herein before mentioned and appointed for payment thereof, together with lawful interest for the same in way and manner herein above speci-fied, without any fraud or further delay, and without any deduction, defalcation or abatement to be made for, or in respect of any taxes, charges or assessments whatsoever, that then and from thenceforth as well this present Indenture and the estate or estates hereby granted and every matter and thing herein contained, as the said obligation above recited shall cease, determine and become void ; and there-upon, the said uses, trusts and estates in and by the said recited

Indenture mentioned, expressed and declared of and concerning the premises aforesaid, shall be restored as fully and amply to all intents and purposes as if these presents had not been made.

In witness whereof, the said parties have interchangeably set their hands and seals hereunto. Dated the day and year first above written."

The instrument was executed by William Hoover and Barbara Hoover, and acknowledged by both, the certificate of the magistrate setting forth a separate examination of the latter, in the manner required by law, and was duly recorded.

The following affidavit of defence was filed.

" Barbara Hoover, the above named defendant, being duly sworn, says, that she is the real party in interest in the above cause, the land sought to be affected being her separate estate, secured to her by marriage settlement, and independent of her said husband, and not liable to his debts and engagements; that she has a just and legal defence against the plaintiff's demand in the above action, the nature and character of which is as follows, to-wit: that by the indenture recited in the above writ of *scire facias,* dated 31st January, 1825, and made between Philip Justus and wife of the one part, and Samuel Asay of the other part, by which said indenture the premises in the said writ described, were conveyed to the said Asay in trust for this deponent's separate use, and not to be subject to the debts or engagements of any husband she then had or might at any time marry, and it was (*inter alia*) also provided in said indenture, " that it might be lawful for the said deponent, notwithstanding any coverture she might be under, by any deed or deeds under her hand, and sealed in the presence of two or more credible subscribing witnesses, to revoke, alter, and make void all and every or any of the said uses, trusts, and estates created and declared by the said indenture concerning said premises, and to declare others of the same; and that after the said uses, trusts, and estates should be so revoked, altered, changed, and made void, it should and might be lawful for her, the said deponent, whether covert or sole, by any deed or deeds under her hand and seal attested as aforesaid, to sell and convey the said premises in fee simple, or conditionally, and in the nature of a mortgage or mortgages to secure the payment of all such sum or sums of money as she the said deponent might from time to time think proper to take up and borrow for her own separate use and disposal with interest therefor ;" and this deponent further says that no deed of revocation in pursuance of or execution of said power to borrow money was ever executed by her previously to the execution of said mortgage ; nor did she ever borrow or take up the moneys alleged to be secured by said mortgage for her separate use or disposal in any way whatever; on the contrary, the said

moneys were borrowed by Wm. Hoover, her husband, from John Stillé who well knew that the said loan was to him, and not to this deponent, and for his and not this deponent's use, and to whom her said husband executed his bond for the amount so borrowed by him; and this deponent further says, that she executed said mortgage upon the persuasion of her said husband, who wanted the money to aid him in his business, and without any consultation or communication with her said trustee, Samuel Asay, who was then in the State of New Jersey."

The District Court entered a judgment in favour of the plaintiffs for want of a sufficient affidavit of defence. The defendants then sued out this writ of error and assigned the following errors.

".1. That the power set forth in the mortgage of William Hoover and Barbara his wife, upon which the action below was instituted, was not well executed, there having been no revocation by her of the uses of the indenture of January 31, 1825, without which revocation she could not execute the said power; and the said mortgage was therefore void.

2. Because the moneys which the said Barbara had a right to secure by the exercise of the said power, were moneys which she might from time to time think proper to take up and borrow for "her own separate use and disposal;" whereas, the moneys which the said mortgage was given to secure were moneys borrowed by the said Barbara's husband, for his own use in his business—a fact well known to the lender, the original mortgagee; which appears also by the record; and is not contradicted by any thing in the mortgage itself."

Mr. G. M. Wharton, for the plaintiffs in error, cited Digges's Case, 6th resolution, (1 Rep. 174.) 1 Sugden on Powers, 256. Lancaster v. Dolan, (1 Rawle, 231.) Thomas v. Folwell, (2 Wharton's Rep. 11.) Walter's Estate, (2 Wharton's Rep. 246.) Dorrance v. Scott, (3 Wharton's Rep. 309.) Smith v. Starr, (3 Wharton's Rep. 62.) Pullen v. Rainhard, (1 Wharton's Rep. 514.) Hamersly v. Smith, (ante, p. 126.) Cothay v. Sydenham, (2 Bro. C. C. 391.)

Mr. Sharswood, contra, cited Co. Lit. 52, b. 1 Sugden on Powers, 433. 2d Sugden on Powers, 135, 6. Towers v. Hagner, (3 Wharton's Rep. 48.) Davis v. Barr, (9 Serg & Rawle, 135.) Frantz v. Brown, (1 Penn. Rep. 257.)

Mr. Ingraham replied.

The opinion of the Court was delivered by

Kennedy, J.—The trust here having been created by a deed executed during the coverture of the said Barbara, in the lifetime of

her first husband, Bradshaw; a question arises whether, upon his death, she becoming thereby sole, and the messuage and lot of ground ceasing then perhaps, as it may be thought, to be *her separate property*, in the proper sense of the phrase, she did not acquire a *certain ascertained indefeasible property* therein, and become vested with that *absolute and unlimited power of disposing of it*, which the common law considers as necessarily incident thereto. It would seem that a man invested with such a property cannot be restrained in his right to dispose of it; and why it should be thought that a married woman can be so restrained, after she has become a *feme sole*, is perhaps not very obvious. It may be said, however, that though this restriction cannot be imposed upon the owner of the legal estate in fee, yet in the case of a mere trust, it may be otherwise; but then to this, may it not be objected, that notwithstanding it is the peculiar province of equity to deal with trust estates, yet *equitas sequitur legem* is the rule. It may also possibly admit of a question here, whether the trust did not cease immediately upon the death of the first husband, by being thereby converted into a *use*, and under the statute of uses into a legal estate. These are questions, however, which were not brought, as it is said, to the consideration of the Court below, nor have they been discussed here; and were it necessary to pass upon them in this case, would require from us more attention than has been given to them. But the present husband having joined the said Barbara in the execution of the mortgage deed, so as to render it available, even if she were to be deemed either the absolute owner of the trust estate, or of the legal estate in fee, in the mortgage premises, at the time of her intermarrige with him; and we having come to the conclusion that the powers contained in and created by the deed of trust, if still in being at the time of giving the mortgage, were well executed thereby, render it altogether unnecessary to decide upon them.

The mortgage on its face purports to have been executed in pursuance of the powers contained in the deed creating the trust; and the question raised by the errors assigned is,—were these powers properly executed, so as to render the mortgage valid and effectual?

The first objection to the mortgage is, that it was executed before revocation and alteration of the uses declared and set forth in the deed of the 31st of January, 1825; and that until such revocation and alteration were first made by a previous, distinct and separate deed, executed by the said Barbara in the presence of two or more credible subscribing witnesses for the purpose, she had no power to execute the mortgage. Admitting, however, that without a previous revocation and alteration of the uses declared in the deed of 1825, she had no power to execute the mortgage, still by her deed of the 7th of December, 1827, which contains the mortgage, she has expressly revoked the old uses created by the deed of 1825, and created and declared new uses, which, according to the principle of

the sixth resolution in *Digges's case*, (1 *Co.* 174,) would seem to be sufficient.   There " it was agreed that other uses might be limited or raised by the same conveyance, which revoked the ancient uses; for inasmuch as the ancient uses cease *ipso facto*, by the revocation, without claim or other act, the law will adjudge priority of the operation of one and the same deed, although it be sealed and delivered at one and the same instant; and therefore it shall be first in construction of law, a revocation and a cesser of the ancient uses, and then a limitation raising the new."   Upon this principle it is, that a lease and release in the same deed are held good; the law presuming the priority in the execution of the lease, as the means of giving effect to the release.   1 *Burr.* 106.   1 *Inst.* 237, a.   1 *Sugden on Powers*, 256, (6th ed.)   And as Mr. Sugden very correctly observes, every power to appoint, is, in effect, a power of revocation and new appointment; and it is therefore, in many cases, of absolute necessity that the powers should be allowed to be executed by the same deed. (1 *Sug. on Powers*, 256, 250.)   And, indeed, in no case, according to his opinion, is it requisite that a power of revocation and new appointment should be executed by distinct deeds, unless the deed creating the power *expressly* require it.   (*Id.* 256.)   According to Lord Coke also, these revocations are favourably interpreted, because many men's inheritances depend on the same. (1 *Inst.* 237, a.)   Then not only under the well settled authority of the law on this subject, but according to the reason of the thing and common sense of it, unless the deed creating the original power here to revoke the uses raised by it, and to appoint new uses, required *expressly* that the same should have been effected by means of distinct deeds, it would seem that the deed from Barbara Hoover to John Stillé of the 7th of December, 1827, was a good execution of the power given to revoke the first uses, and again of the power given to appoint and declare new ones; for it cannot be said that the deed creating the original powers *expressly* required that they should be executed by distinct deeds; nor can it be fairly said, I think, that such is the necessary import of the words used in relation to the manner in which the power shall be executed: The words are, " it is provided and expressly understood and agreed by and between the parties hereto, that it shall and may be lawful for the said Barbara Bradshaw, at any time or times hereafter, during her natural life, notwithstanding her present or any future coverture, or whether she be covert or sole, by any deed or deeds, writing or writings, to be by her signed and sealed in the presence of two or more credible subscribing witnesses, to revoke, alter, change and make void, all and every or any the uses, trusts and estates herein before limited, expressed and declared, of and concerning the premises hereby granted and conveyed, or any part thereof, and to declare new and other uses of the same, as to her may seem proper, and that *after* the said uses, trusts and estates shall be so revoked, altered, changed and made

(Hoover *v.* Samaritan Society.)

void, it shall and may be lawful for the said Barbara Bradshaw, notwithstanding any coverture, or whether she be covert or sole, by *any* deed or deeds of conveyance or assurance in the law, under her hand and seal to be attested as aforesaid, to grant, bargain, sell, dispose of and convey the messuage, lot and premises aforesaid, with the appurtenances, to any person or persons whomsoever, his, her or their heirs and assigns forever, either absolutely in fee simple, or conditionally in the nature of a mortgage or mortgages, to secure the payment of all such sum and sums of money as the said Barbara Bradshaw may from time to time think proper to take up and borrow for her own separate use and *disposal,* with interest therefor." Here the word "after" in the clause just recited, where it says "*after* the said uses, &c. shall be so revoked, &c." is relied on as showing most clearly that distinct deeds are thereby required for the purposes of revoking the old, and after that is done, then for appointing the new uses. But we have seen that when the revocation of the old and the appointment of the new uses are made by the same deed, as in this case, the clause of revocation preceding that of the appointment, is considered as operating and taking effect prior in point of time, by construction of law, to the latter clause declaring the new uses; so that the appointment of the new uses in such case, is deemed in law to be made *after* the revocation of the old has taken place. Neither do the words "any deed," used in that part of the same clause, giving authority to sell or mortgage the property, necessarily require a distinct deed from that revoking the old uses, nor in the least aid the construction contended for by the plaintiff in error, because they may be construed to mean the *same deed,* and not another deed, if necessary, in order to give effect and validity to what was intended to be an execution of the power.

But it is objected again, that if the power created by the deed of 1825, be considered well executed, still the purpose for which the money was raised upon the mortgage was not such as to warrant the giving of the mortgage. It is contended that the money was not borrowed or obtained for the use of the wife, but for that of the husband, and therefore contrary to the object for which the powers were granted, and to decide otherwise would be overruling the principles established by this Court in *Lancaster* v. *Dolan,* (1 *Rawle,* 231.) The case of *Lancaster* v. *Dolan,* goes no farther than to determine that real estate held in trust for the use of a *feme covert,* cannot be sold and disposed of or mortgaged by her without a power expressly given to her for that purpose; and if given, that it must be executed in the manner and form directed, if any be prescribed, otherwise it will not avail. This is doubtless contrary to the English law on this subject, which looks upon her, in such case, as the absolute owner of the trust estate, capable of exercising the highest acts of ownership over it, by selling or disposing of it in any way she pleases, unless restrained from doing so by the deed or instrument

creating the trust.    But still even here, where she is authorised, as
in this case, to sell and dispose of the estate absolutely in fee, for
such consideration as she may be pleased with, by deed executed
under her hand and seal in the presence of two or more credible
subscribing witnesses, or to mortgage or pledge it by deed, executed
and attested in like manner, to secure the payment of any sum or
sums of money she may choose to borrow or take up on it, for her
*own separate use and disposal,* it has never been held or judicially
intimated, so far as I know, that it would be in the slightest degree
improper in her, or that she has not a perfect right to give the money
arising from the sale or the mortgage of the estate, if made, either
to her husband, for the purpose of assisting him in his business, or to
her children, with a view to advance them in the world.   The words
however, " for her own separate use" have been made the ground
of this second objection by the plaintiff in error's counsel ; and it has
been argued that because the wife let the husband have the money
obtained upon the mortgage, it cannot therefore be said to have been
borrowed by her for her own separate use.  This argument, however,
seems to be more specious than solid ; for notwithstanding the hus-
band got the money and had the use of it, still it was by the consent
and authority of his wife ; in truth, it must be considered as bor-
rowed and given by her to him, and for aught that appears, it may
have been, even as regarded her own personal comfort and advan-
tage, a very good, if not the best and most judicious use that she
could have made of the money.   Be this, however, as it may, it
cannot be doubted, that in many instances, a wife could not dispose
of it more advantageously for her own use, than by letting her hus-
band have it to assist him in his business.   That a wife, however,
may let her husband have the benefit of her separate estate, espe-
cially when she has the power of disposing of it, was sanctioned by
this Court in *Towers v. Hagner*, (3 *Wharton's Rep.* 48.)  And whether
she has made a prudent or imprudent, a good or a bad disposi-
tion of the estate is not, I apprehend, to be made the test, whereby
the validity of such disposition, whatever it may be, is to be deter-
mined.   Having the power expressly given to her to dispose of it,
either absolutely or conditionally, she must be regarded as the owner
of it, and as having the right to dispose of it, to whom and upon such
terms as she pleases.   The great design of creating trusts for the
separate and sole benefit of married women, with powers to dispose
of the trust property for their sole and separate use, without the con-
sent or control of their respective husbands, is to make them, as it
were, the absolute owners thereof, so that their husbands shall have
no right to intermeddle with, or use it for any purpose whatever,
unless by and with the consent and authority of their wives.   And
wives certainly may in such cases, authorise their husbands to act
for them, either in regard to the property itself, or the product of it,
wherever it would be competent for them to confer authority upon

strangers for the same or a like purpose.   The trust in such case is not to be considered as created with a view to prevent the husband from exercising an influence over his wife, by evidencing his constant regard and affection for her by acts of the most tender kindness, but resorted to and adopted for the purpose of preventing the husband from exercising, according to *his own will,* any act of ownership whatever over the property, or having the use of it, without the consent of his wife.   But who can doubt that he may not with her consent have the use of it so far as she is authorised to use it herself. If she cannot use it to promote the advantage or benefit of her husband, when she has full power to dispose of, and use it for her own separate benefit, it may in many instances prevent her from embracing the best chance she has of promoting by means of it, her individual comfort ; and upon the same ground, she would seem to be restrained from disposing of, or giving it to her children, to advance or promote their interest in life, and must be limited and restricted in the use of it to the bare procurement of what shall be considered strictly necessary for her subsistence, as in the case of an infant. This however, cannot be, for it must be assumed in such case, from the very nature of the thing itself, that the author of the trust, in granting to the wife the power to dispose of the property, as owner of it, for her own sole and separate use, confided in her discretion, as being sufficient to deal with it in such manner as best to make it answer this end, in the way most agreeable to herself ; consequently whatever she shall determine on in this respect, excepting in cases where some artifice or fraud may be practiced upon her, must be received as conclusive evidence of its being for her use, and must be considered as binding · upon her afterwards. · Being considered a *feme sole* to the full extent of her power over the property, she must of course, be permitted to judge for herself as to the particular use she shall make of it, in order most effectually to promote her own comfort and happiness.   If she be not the proper judge of this, and the only one, I would ask who is ? certainly not the trustee, nor any other named or referred to in the deed creating the trust in her favour.   In the case now before us, no one has any interest in the property excepting Mrs. Hoover; she may consume it all, or dispose of it as she pleases, and no one has the least right to object to her doing so ; but the object for which the money was borrowed was perfectly natural, and had nothing in it unreasonable, and for aught that appears to the contrary, the prospect of its being advantageous and useful to herself, individually, as well as her husband, by enabling him to derive large profits from his business, might have been very promising; but let that be as it may, she was competent to judge of the thing for herself, and whether she has gained or lost by it, there is no reason why she should not be bound by the mortgage, and it considered good, upon a proper construction of the words " borrow for her own separate use," without taking into consideration the

(Hoover *v.* Samaritan Society.)

superadded words in the deed " and disposal," which seem to sup-
port and strengthen our conclusion, by showing that she should
have the power to raise the money upon mortgage and dispose of
it as she pleased.   We therefore think the Court below were right
in rendering judgment for the plaintiff there.   The judgment is
accordingly affirmed.

Judgment affirmed.