## Rogers' Estate.

*Will—Power—Wrongful exercise of power.*

Where a party undertakes to execute a power, but by mistake does it imperfectly, equity will interpose to carry his very intention into effect in aid of those who are peculiarly within its protective power, that is, creditors, purchasers, wives and children; but equity will not lend its aid in favor of a volunteer, nor give any assistance where both the remainder-man, under the alternative devise over of the donor, and the appointees are volunteers, and stand in equal equity.

Where, under a special and restricted power, an appointment is made in excess of the power, whether the excess renders the appointment wholly void depends upon whether the excess is distinct and separable from the authorized portion of the appointment.

A power to dispose by will of a certain sum of money out of a larger fund, to one class, and the balance of the fund to another class, with an alternative disposition by the donor of the power upon failure to make such distribution, is not validly executed by appointing a larger sum to the one class, and the balance of the fund to members of the second class not mentioned in the alternative disposition made by the donor.

Argued Dec. 11, 1905. Appeal, No. 179, Oct. T., 1905, by Sarah Jane Pierce, from decree of O. C. Chester Co., sustaining exceptions to auditor's report in Estate of Sarah Jane Rogers, deceased. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of Charles H. Pennypacker, Esq., auditor.

BUTLER, J., filed the following opinion:

Sarah Jane Rogers by will gave to her husband, Evans Rogers, the residuary portion of her estate, for life, with power of appointment; directing specifically its disposition in case he should fail to execute the power. Henry Marshall, a cousin of Mrs. Rogers on her father's side, who is given a smaller legacy under Mr. Rogers' appointment of the residue than he would take under Mrs. Rogers' disposition of it, contends that the attempted execution of the power was invalid, and excepts to the failure of the auditor to make distribution in accordance with Mrs. Rogers' alternative disposition.

After giving Mr. Rogers the use of her residuary estate for life, Mrs. Rogers' will proceeds : " I do authorize and empower

him to dispose of the same by his will as follows: $4,000 to my mother's family and the balance to my father's family, in such manner as he may think proper; but in case he fails to make such disposition, I give and bequeath to my mother's family as follows:" The testatrix then completely disposes of her residuary estate to designated persons, all of whom are of her mother's or father's families.

Evans Rogers by his will, reciting the power, gives to members of Mrs. Rogers' mother's family $4,500, and to members of her father's family the balance of her residuary estate.

Thus, in the attempted execution of the power he apportioned among selected members of the mother's family a sum $500 larger than that directed, and among selected members of the father's family a sum $500 smaller than that directed. In neither instance did he make an appointment to the class named, of the fund submitted to his disposition. He did appoint the entire residue of his wife's estate among members of her father's and mother's families, but the power demanded more than this. It divided the residue into two funds, one of $4,000, the other consisting of the balance of the residue, and it enjoined the appointment of the first fund to the one class, and the appointment of the other fund to the other class. As before stated, the donee appointed neither of these funds to the classes named, but other and different funds, in the one instance larger, in the other smaller than provided by the power.

It must be conceded that the donee defectively executed the power, that his execution of it cannot stand unaided.

Are the parties interested, are the circumstances, such as could move a court of equity to lend its aid? If so, is the defect in the execution of this power curable?

These, we think, are the two questions presented in the case.

The appointees here, who must ask the aid of equity, are mere volunteers, collateral relatives, in precisely the same class as, and having but equal equities with, those who will take in case the appointments fall. This being the situation, the defective execution of the power would not be aided, even if the donee's transgression could be viewed as a matter of mere form and unsubstantiality. " On the contrary, when a

party undertakes to execute a power, but by mistake does it imperfectly, equity will interpose to carry his very intention into effect in aid of those who are peculiarly within its protective power; that is, creditors, purchasers, wives and children: " 1 Story Eq. Jur., sec. 170. " But equity will not lend its aid in favor of a volunteer, nor give any assistance where both the remainder-man and the appointee are volunteers: " 18 Am. & Eng. Ency. of Law, 983, notes 3 & 4. In Margaret Pepper's Will, 1 Pars. 436, it is declared that equity may aid the execution of a power in favor of children, creditors, or even a charity, but not in favor of volunteers. In Anne Blackford's Estate, 4 W. N. C. 17, the donee had power to appoint by will her husband's estate, to such of his relatives as she might see fit. She sought to execute the power, and violated its terms in no other respect than that she appointed one interest in trust. The orphans' court of Philadelphia held the attempted execution of the power to be utterly void, though it could have made the execution conform exactly to the terms of the power, by simply striking down the trust feature of the one interest, and decreeing that the beneficiary should take an absolute estate along with the other appointees. As here, the appointees were mere volunteers.

In Porter et al. v. Turner et al., 3 S. & R. 108, the only defect charged in the execution of the power was the donee's alleged failure to make the appointment, as the power directed, by an instrument under seal. It was held that such mere formal defect would be fatal unless equitable relief could be had. And it is plainly intimated that the appointees, grandchildren, were so remote in relationship as to be mere volunteers entitled to no equitable assistance; but it is said that even assuming for argument's sake that grandchildren fall under the same rule as children, no relief would be granted, because whether the appointments stood or fell, the property went to the same class. In this case the court say: " There are cases where equity will aid the defective execution of a power; relief will be granted in favor of creditors, or a wife or children. But this is not one of those cases. The appointment, it is true, is in favor of grandchildren. But even supposing, for argument's sake, that grandchildren fall under the same rule as children, there would be no reason for an interposition here, because

in default of an appointment the estate would go to grandchildren, so that the equity of the contending parties would be equal. The solemnity of a seal is not considered with the same veneration now as formerly. Still this court has no power to dispense with a seal, where the party creating a power has required one. The question is therefore reduced to a single point, viz.: whether there was an appointment under the seal of Mrs. Dupuy. That she intended to make an appointment under her father's will is certain."

In Slifer v. Beates, 9 S. & R. 166, the only defect in the execution of the power was that the donee instead of joining in a deed with certain trustees whose approval of his disposition of the donor's real estate was a condition of the power, disposed of the real estate by will. The trustees witnessed his will and promptly after his death, by formal deed, expressed their approval of his devise. In holding the execution of the power to be void, the court say : " It is conceded that if the power be defectively executed, the parties being volunteers, and standing in equal equity, chancery could grant no relief, nor remedy the defect. . . . The province of the judge is not to inquire whether the circumstances required are important or unimportant, essential or ceremonial, reasonable or unreasonable, but what they are. . . . Where forms are imposed on the execution of a power, the circumstances may be perfectly arbitrary, unessential in point of effect, to the validity of the instrument, by which the power may be exercised; but being required by the creator of the power, they can only be satisfied by a strictly literal and precise performance, and without recapitulating the cases in which it has been decided there must be this literal adherence, it may be said, that in every case the originality of man can devise, the terms of the power must be strictly complied with: Sugden's Powers, 211, 213."

Under the authorities cited, we are clearly of opinion that Mr. Rogers' appointees have no equities which would move a court of equity to attempt to aid and cure the defectively executed power. The appointees are mere volunteers, collaterals, members of the families of Mrs. Rogers' mother and father, among which same relatives her will specifically divides the property here involved, upon failure of her husband to execute the power.

If, for the sake of argument, it be conceded that under the circumstances presented a court of equity would attempt to aid and cure the defective execution of the power, is it curable, could it be sustained?

The cases already cited, as well as Wickersham v. Savage, 58 Pa. 365; Horwitz v. Norris, 49 Pa. 213; Fidelity Co.'s Appeal, 4 W. N. C. 265; Pepper's Appeal, 120 Pa. 235, emphatically impress the propositions that the estate appointed is that of the donor, not of the donee; that the latter is merely a trustee of the former to carry out and execute the orders contained in the power, and has no discretion to vary the conditions imposed.

These cases, and other authorities which will be cited, make it manifest that even a court of equity, moved by the situation of the parties to lend its fullest aid, cannot sustain an attempted execution of a power where the donee has failed to regard a material feature of his power and the defect cannot be supplied with certainty.

Mr. Rogers was invested with the special, limited power to apportion among a certain class a certain fund, among another class a certain other fund. Among the designated classes, he was desired and authorized by his wife to apportion the two funds named, and none other. He failed to apportion either of them. Unless this failure can be supplied, unless it is possible now to ascertain from Mr. Rogers' will how he would have apportioned the two funds in question, to the classes named, manifestly the execution of the power falls, and Mrs. Rogers' alternative disposition of the property attaches. Mr. Rogers' power to apportion the funds was purely personal, it cannot be delegated to, nor performed by another. " It follows from the idea of a personal confidence reposed in the donee, that such a power cannot be delegated. A trustee appointed by the court in place of the donee cannot execute the power: " 18 Am. & Eng. Ency. of Law, 968–970.

Mr. Rogers apportions $4,500 among designated members of his wife's mother's family. Is this apportionment a certain guide as to how he would have divided the $4,000 among the members of this class? Clearly not. If before his death he had discovered his error, in apportioning $4,500 instead of $4,000, what would have been his mode of correcting it? He

might have cut out one of the $500 legacies, he might have abated all of the legacies proportionately, he might have preferred a completely new scheme of division. Obviously it is impossible to supply his undeclared apportionment of the $4,000.

If Mr. Rogers, as directed, had divided the $4,000 among members of the class, and had appointed to them an additional $500 of the residue of his wife's estate, then, so far as this branch of his power is concerned, it would be fully executed, with an independent excess added, which could be stricken down. "An execution of a power is not void because it exceeds the power, if the part in excess is separable from the part authorized by the power: " 18 Am. & Eng. Ency. of Law, 921. "Where there is the complete execution of a power and something ex abundanti added, which is improper, there the execution shall be good, and only the excess void; but where there is not the complete execution of a power, or where the boundaries between the excess and execution are not distinguishable, it will be bad: " Alexander v. Alexander, 2 Ves. 640. Mr. Rogers did not completely execute the power by appointing $4,000, and then, independently, appoint $500 more ; but appointed $4,500 without indicating at all the " boundaries between the excess and execution," without affording any means of locating the $500 excess.

Turning to the other branch of the power, the distribution of a specified fund to Mrs. Rogers' father's family, and considering the possibility of correcting Mr. Rogers' defective execution in appointing to that class a fund of $500 less than specified, we are confronted, first, with the difficulty that this $500 was erroneously added to the $4,000 distributable to the other class, has entirely lost its identity in the resultant $4,500 distributed to Mrs. Rogers' mother's family, and cannot be distinguished and returned for distribution in her father's family. But if this difficulty be overlooked, if the matter be viewed as if Mr. Rogers had distributed all of the specified fund to the father's family, excepting $500, and had erroneously appointed it—the $500—by itself, to one outside the class, so that its identity would be clear and it would be readily available for appointment within the class, who within that class are to receive it? Mr. Rogers alone had authority to say where every

penny of the entire fund should go within the class, and power to apportion this errant $500 of the fund survived to no one.

He failed to do the essential thing directed by the power, to declare an apportionment of the entire balance of the residue after deducting $4,000 among his wife's father's family. Can this failure be supplied? It cannot, unless his disposition of the part of the fund within the proper class is a certain guide to what his disposition would have been had he confined the entire fund to the class.

The amount to be distributed, in connection with the number and needs of those within the class to which the distribution is limited, are the considerations that would naturally control a distribution, and it follows that Mr. Rogers' appointment of a part of the fund within the class, affords no basis for a reliable conclusion as to what his disposition would have been had he appointed the entire fund to the class. Upon the basis of a mistakenly assumed authority to appoint part of the fund outside of the class, thus bringing its members in competition with foreigners, Mr. Rogers has declared to what members of the class and in what proportions a part of the fund shall go; but it does not follow at all if he had done the one thing he had authority to do, had limited the entire fund to the class, that the same members would have taken it and in the same proportions.

If he had discovered his error after executing his will, he might have appointed the $500 to a new legatee within the class, he might have simply applied it to a proportionate increase of the existing bequests within the class, he might have arranged a new and radically different disposition of the fund. As to this we could only conjecture and guess.

It follows inevitably that Mr. Rogers' attempted appointment of this fund fails entirely; that upon the basis of a distribution of the whole fund within the class, as commanded by the power, he did not act at all, and he left behind no reliable chart from which it is possible now to ascertain and declare how he would have apportioned the entire fund to the designated class. "It must not be forgotten when handling such a question, that we are dealing with the property of another, and not with that of the donee of the power. In the donee it is but a trust, and those interested in the estate of William Bingham (the donor)

have a right to know that the will of their testator has been actually executed as he intended by the donee of his power. Hence, they are entitled to certainties, not mere conjectures or possibilities: " Bingham's Appeal, 64 Pa. 345. This language of the court occurs in a case where the question was whether the donee intended to execute the power, but it illustrates the exactness and certainty essential throughout the execution of a power.

The reasonings and conclusions we have announced relative to Mr. Rogers' attempted execution of that branch of the power which concerns Mrs. Rogers' father's family, are apparently exactly and fully sustained by the case of Varrell v. Wendell, 20 N. H. 431. There the donee deceased had, through mistake, exercised the power of appointment in favor of some who were, and some who were not the legitimate objects, had distributed part of the fund within the class, and part outside. It was held that the attempted execution was in its entirety utterly void and distribution was directed under an alternative provision of the donor's will, as if the donee had not attempted to execute the power; the court saying in part: " Having thus arrived at the conclusion that the testatrix was limited, in the exercise of the power, to an appointment of the fund among such as were of nearest kindred to the testator, according to the statute of distributions, a question arises, whether any regard should be had to the action of Mrs. Gardner in giving a part of the property to those persons. In short, should her will, in assigning to certain of those persons a portion of the stock, be regarded as an execution of the power pro tanto, and, if so, final as to those persons? Her appointment was, as an execution of the power in the extent in which it was intended, invalid. Her act was based upon a misapprehension of her rights and the rights of others in relation to the property, and she proceeded upon the belief that she might select the objects of her preference from a much wider range than that to which she was legally confined. So that, although it appears from her acts what shares she would, in the discretion confided to her, have assigned to the persons in question, as compared with those with whom she did in fact put them in competition, it by no means follows that, in the narrower competition of claims to which she should have restricted her

choice, she would not have assigned to those individuals very different portions. Indeed, it is most probable, and is to be presumed from the plain aspect of the case, that the misapprehension under which she acted very materially affected her conduct with respect to these individuals, and they ought not to be bound by a judgment which proceeds so entirely upon a mistake in a very material matter. . . . It is not to be presumed that, if the donee of the power in the case before us had been made aware of the mistake she had committed, and had undertaken to correct it, she would, without disturbing the shares that she had apportioned to the next of kin whom she had selected, have simply divided the ill-apportioned residue in equal shares among all the next of kin. The court did that in Sadler v. Pratt, 5 Simons, 45, but there the result was perfect equality among the appointees, and precisely the same that it would have been if the appointment had been entirely vacated. A very different result would follow here, and in cases like the present there is no safety or propriety in presuming what the testatrix would have done had she been aware of all the circumstances.

" The fact that is practically of most importance is, that she did not execute the power. . . . This is not one of those cases in which, in default of an appointment, the fund goes over and is wholly lost to all of the number of possible appointees. In such a case there would be a reason that does not here exist, for upholding to the extent to which it had been made in favor of the proper objects. How such a case would be decided, it is not necessary to inquire. . . .

" The conclusion, therefore, is, that the power of appointment has wholly failed of being executed, the attempted appointment being null and void. The court cannot execute the power. The fund must go, as if the donee had not attempted to execute it, namely, among the next of kin : Atty. General v. Doyley, 7 Ves. 58n ; Reade v. Reade, 5 Ves. 744."

In Salter v. Howell, 15 S. & R. 188, the donee was authorized to appoint a fund of $4,000 to her sister's children. She appointed $3,000 of the fund contingently to one of her sister's children, and the remaining $1,000 to a grandchild.

The court held the attempted execution of the power to be wholly void.

If in our case the court would, legitimately, bring back the misappointed portion of the fund, and in lieu of Mr. Rogers declare an apportionment of the whole fund within the designated class; then in the case cited, treating the donee's appointment of $3,000, contingently, to her sister's child, as an appointment absolutely, the court would have brought back the misappointed $1,000, and instead of having declared the execution of the power void, would have cured and sustained it by making, in the place of the donee, a distribution of the entire $4,000 among the proper class.

In the case just referred to, the court say: "There is a strictness required in the execution of powers which frequently appears to be harsh; but if once a latitude was allowed, and the direction of the testator as to the appointment was departed from, there would be no rule to go by; and if an implied or presumed intention, even in hard cases, was permitted, and the broad rule of strict adherence to be broken in upon by a minute inquiry into the circumstances of families, it would be highly mischievous and render the judge the distributor of favors, instead of deciding on the words of the testator, or his clear and declared intention."

In Neilson's Estate, 17 W. N. C. 326, the donee was required to appoint to all the members of a class. She made an appointment excluding certain members. The court did not undertake to cure her defective appointment, to make an apportionment for her among all the members of the class, but simply declared her attempted appointment utterly void and decreed a distribution under her donor's will.

In Stephenson v. Richardson, 88 Pa. 40, a father devised real estate to his daughter for life and at her death in fee to such of her children as she might appoint. She directed the real estate to be sold, and divided part of the proceeds among certain of her children, and part outside the designated class among grandchildren. Counsel argued that the excess of power in directing the real estate to be sold was immaterial, that the children named by the donee could take interests in the land proportionate to the shares of proceeds he has sought to give them, and that the misappointments to grandchildren could be corrected by dividing those shares among all the children of the donee, or among all those named in her ap-

630 ROGERS' ESTATE.

Opinion of Court below—Assignment of Errors. [31 Pa. Superior Ct.

pointment according to their respective interests. It would have been no more difficult to aid and sustain this defective execution of a power, than it would be to sustain the one we are considering. In the case cited the court held the defectively executed power to be void, and distribution was made as if the donee had not attempted an execution.

In conclusion, we are of opinion that under the circumstances existing, a court of equity would not seek to aid Mr. Rogers' defective execution of the power of appointment of the residue of his wife's estate.

His appointees were mere volunteers, and are substantially those who will in default of an appointment take the property under the alternative provision in Mrs. Rogers' will.

Further, we are convinced that if the circumstances warranted an effort to aid and sustain Mr. Rogers' appointments, the effort would fail. He did not apportion the funds submitted to his disposition among the classes designated; he is dead and has left no guide by which we can know his mind upon the question. It inevitably follows that his wife must be disappointed of her purpose to have him appoint the two funds in question to the classes named, and the alternative provision of her will, giving the residue of her estate to these classes according to her own schedule of distribution, attaches.

We have no doubt that Mr. Rogers' defective execution of the power conferred by his wife's will was an inadvertence, and we realize that his appointment of the residue of his wife's estate, recently made, with a knowledge of the present situation of the members of his wife's family, ought to be sustained if possible. With these considerations in mind, reluctantly, and only after earnest consideration, has the conclusion been reached, that the attempted execution of the power must be declared void.

The exceptions are sustained, and the report is referred back to the auditor so that he may make distribution of the fund in his hands as the will of Sarah Jane Rogers provides in the event of her husband's failure to execute the power of appointment conferred upon him.

*Error assigned* was the decree of the court.

*John G. Johnson,* with him *J. Frank E. Hause,* for appellant.—
The exercise of the power was pro tanto good : Wilkinson v.
Duncan, 30 Beavan, 111; Asay v. Hoover, 5 Pa. 21; Law-
rence's Estate, 136 Pa. 354; Zouch v. Woolston, 2 Burrows,
1136; Laurie v. Clutton, 15 Beavan, 65; Eales v. Drake,
L. R. 1 Ch. Div. 217.

*Thomas S. Butler,* with him *Thomas W. Baldwin,* for ap-
pellee.—The execution of the power by the donee is defective
and cannot stand unaided: Evans's Est., 10 Pa. Dist. Rep.
261; Safe Deposit & Trust Co. v. Friend, 201 Pa. 429 ; Sug-
den on Powers, 452.

Equity will not aid the defective execution of the power, be-
cause there is no meritorious consideration in the appointees
of the donee.

In Pennsylvania, a power may not be exercised in part.
The power must be strictly executed.  If valid in part, or
only partially executed, it fails entirely: Porter v. Turner, 3
S. & R. 108 ; Horwitz v. Norris, 49 Pa. 213; Wickersham v.
Savage, 58 Pa. 365; Pepper's App., 120 Pa. 235 ; Smith's Es-
tate, 4 W. N. C. 265; Neilson's Estate, 17 W. N. C. 326;
Asay v. Hoover, 5 Pa. 21; Lawrence's Estate, 136 Pa. 354.

OPINION BY PORTER, J., October 5, 1906 :

The question depends mainly on the will of Sarah Jane
Rogers.   Her intention, and not the intention of Evans Rogers,
must furnish the governing rule. ` The clause of the will of
the testatrix which is material to this issue is as follows : " All
the rest and residue of my property, real, personal and mixed,
I give and bequeath to my beloved husband, for his use and
benefit during his life, . . . . and I do authorize and empower
him to dispose of the same by his will as follows: four thou-
sand dollars to my mother's family and the balance to my father's
family in such manner as he may think proper; but in case he
fails to make such disposition, I give and bequeath to my
mother's family as follows : " (Here follow pecuniary legacies
to a number of members of the family of the mother, each being
named, aggregating $4,500) " and the rest and residue to my
father's family in the following manner: " (Here follow pe-
cuniary legacies, to individuals named, aggregating $3,000)

"the balance to be divided as follows: one-third to my uncle, William Marshall, his heirs or assigns, and the other two-thirds to my aunt, Susanna Pierce, her heirs or assigns."

There can be no question that Evans Rogers, now deceased, attempted to exercise the power of appointment thus conferred upon him by the last will of his wife. His will specifically refers to the power of appointment, and declares his purpose to execute it, and then proceeds: "Therefore in the exercise of this authority and power I give and bequeath said residue (my executors hereinafter named first to pay the collateral tax of five per cent out of said residue) as follows:'" (Here follow pecuniary legacies to individual members of the family of his wife's mother, aggregating $4,500; and pecuniary legacies to individuals named who were members of the family of his wife's father, including one legacy of $14,000 to Sarah Jane Pierce, the appellant, which aggregated $23,000, and a bequest of the rest and residue of his late wife's estate to Sarah Jane Pierce.) The appointments aggregating $4,500 to members of the family of the wife's mother, and the direction that the collateral inheritance tax on those legacies should be paid out of the fund, practically brought the appointments to the family of the wife's mother up to $4,725, but the direction that the collateral inheritance tax be paid upon the legacies is separable from the bequests, and may be disregarded.

For reasons satisfactory to herself, and of which she was the only judge, Sarah Jane Rogers empowered her husband to appoint $4,000 of this fund to members of the family of her mother, and the residue thereof to members of the family of her father; but in providing for the case of his failure to make a valid disposition under this power, she bequeathed to individual members of the family of her mother sums aggregating $4,500, and the rest and residue, after deducting the $4,500, she bequeathed to individual members of the family of her father. Evans Rogers, in attempting to execute the power, appointed $4,500 of the fund, instead of $4,000 which he was authorized to appoint, to members of the family of his wife's mother, and the balance to members of the family of his wife's father. In selecting the members of the respective families he chose individuals other than those to whom Sarah Jane Rogers bequeathed and devised the property in case of the failure of

her husband to appoint, and the property should in accordance with her own will be divided upon the basis of $4,500 to the family of her mother and the remainder of the estate to the family of her father. The will of the donee of the power did not appoint the estate in the proportions which he was authorized to do, nor, having exceeded the power and divided the property between the respective families, upon the basis adopted by the donor, in her devise over upon his failure to validly appoint, did he select the individuals to whom the donor bequeathed it in case the division was to be made on that basis.

The power was special and restricted and was to be strictly executed; if otherwise executed its execution amounted to nothing, as the appointer had no estate in himself to give, and no authority to give but that expressly conferred: Woods' Estate, 1 Pa. 368; Horwitz v. Norris, 49 Pa. 213; Stephenson v. Richardson, 88 Pa. 40; Bingham's Appeal, 64 Pa. 345; Wickersham v. Savage, 58 Pa. 365; Pepper's Appeal, 120 Pa. 235. That the appointments under the will of the donee exceeded his power cannot be questioned. He appointed to individual members of the family of his wife's mother $500 more than he was authorized to appoint, and to individual members of the family of his wife's father $500 less than he was authorized to appoint. Where, under a special and restricted power, an appointment is made in excess of the power, whether the excess renders the appointment wholly void depends upon whether the excess is distinct and separable from the authorized portion of the appointment: Lawrence's Estate, 136 Pa. 354. The auditor, to whose report exceptions were sustained by the court below, held that the legacies to the members of the family of the mother of the donor should abate proportionally, so as to reduce the aggregate amount of the legacies to the members of that family to $4,000, and that said sum of $500, thus secured, should be awarded to the appellant, a member of the family of the donor's father, as the legatee of the residue of the donor's estate, under the will of the donee. That this sum which the donee had appointed to the family of the wife's mother, in excess of his power, could not be so disposed of seems clear, for the reason that the appellant could only take because it had been validly appointed to her by the donee under

his power, whereas the donee had appointed that very money to other parties: Salter v. Howell, 15 S. & R. 188.

The opinion of the learned judge of the court below, which will appear in the report of this case, fully vindicates his conclusion that the appointment made by the donee, to individual members of the family of his wife's mother, is not separable from the part which was authorized by the power, and that it is not possible to ascertain from the will of the donee how he would have apportioned the $4,000, which under the power he had authority to appoint to members of the family of his wife's mother. " Where a party undertakes to execute a power, but by mistake does it imperfectly, equity will interpose to carry his very intention into effect in aid of those who are peculiarly within its protective power; that is, creditors, purchasers, wives and children:" 1 Story Equity Jur., sec. 170. But equity will not lend its aid in favor of a volunteer, nor give any assistance where both the remainder-man, under the alternative devise over of the donor, and the appointees are volunteers, and stand in equal equity: Porter v. Turner, 3 S. & R. 108; Slifer v. Beates, 9 S. & R. 166.

The intention of the donor, with regard to the power of appointment which she intrusted to her husband, is to be gathered from her whole will. We do not say that had the donee appointed to members of the family of the wife's mother a sum less than $4,000, that such appointment would not in itself be valid; it is not necessary to decide that question. We are of opinion, however, that as between the authority to appoint to the family of the wife's mother and the family of her father, the power was not divisible. The authority of the donee to appoint to the members of the family of the wife's father was confined to " the balance," after appointing $4,000, as authorized by the donor, to the family of the wife's mother. The will of the donor clearly indicates that it was not her intention that the donee should appoint to the members of her father's family until the donee had made such an appointment as her will authorized to the members of the family of her mother. Had the donee expressly declined to appoint the $4,000 to the family of the mother of the donor, he would not have had authority to appoint the amount in excess of $4,000 to the family of the donor's father, for such an appointment would have come di-

rectly in conflict with the alternative bequest over, by the donor, which provided that in case the donee failed to make the disposition which she authorized, certain designated members of her mother's family should receive in the aggregate $4,500. We are of opinion that the will of Evans Rogers was not a valid exercise of the power of appointment, and that the distribution as made by the court below, under the will of Sarah Jane Rogers, was correct.

The decree is affirmed.

RICE, P. J., and MORRISON, J., dissent.