# Bingham's Appeal.

1. The intention of the donee of a power is the criterion to determine its execution.

2. The intention must appear in the instrument, which must refer to the power to be executed or actually dispose of its subject.

3. The intention to execute may be ascertained, when the instrument cannot have any operation, except that the donee intended to execute the power.

4. Positive legal presumptions cannot judicially arise upon equivocal or uncertain conditions of fact.

5. Merely the fact that the bequests exceed the testator's estate, will not manifest an intention to execute a power.

6. The subject of a power is the property of the donor, not of the donee, in whom it is but a trust.

7. An English statute provided that a bequest of personal property, &c., in a general manner, shall include personal property of which the testator had the appointment. *Held,* that such bequest by the donee residing in England, of a power created by the will of a resident of Pennsylvania, did not pass property under the will.

8. The law of the *situs* of the subject of the power, controls the execution of the power.

March 1st 1870. Before READ, AGNEW and SHARSWOOD, JJ, THOMPSON, C. J., at Nisi Prius.

| 64 | 345 |
| 194 | 46 |
| 64 | 345 |
| 31 SC | 627 |
| 31 SC | 633 |
| 64 | 345 |
| 222 | 1145 |

[Bingham's Appeal.]

Appeal from the decree of the Orphans' Court of *Philadelphia:* No. 259, to January Term 1870 : In the matter of the account of Charles Willing, trustee of Alexander B. Bingham, under the will of William Bingham, deceased.

William Bingham was domiciled in Philadelphia; his will was proved there June 16th 1856.

In the first paragraph the testator says :—

" I hereby declare that my domicile is now, and has always been, notwithstanding my residence abroad, in the said city of Philadelphia, and that I have neither done or intend to do any act whereby to make any change thereof, and that this my last will and testament and appointment, is and shall be made, taken and considered to have been made under and subject to the laws of the said state of Pennsylvania, and that my whole estate, real and personal, whether standing in my own name or in the name or names of any trustee or trustees for my use or subject to my appointment, shall be subject to and divided and distributed according to the provisions hereof, and according to the laws of said state."

He bequeathed one-fifth of the residue of his personal estate to trustees, in trust, "to invest and keep the same invested in English or American securities, according to the best judgment of the said trustees or a majority of them ; and after paying the expenses of this trust, to pay over the whole net income thereof, unto my son Alexander Baring Bingham, his own receipt or orders to be the only sufficient vouchers for the payment thereof, for and during the full term of his natural life, and immediately upon his death, to divide the same equally among his children, or the issue of any deceased child, living at the time of his death, the issue of said deceased child taking only their parents' share."

He further provided that the income payable as aforesaid should not be liable in the hands of the trustees to the debts of the cestuis que trust, nor be subject to alienation or anticipation either by act of law or of the parties.

In the 14th clause he directed as follows : " And I further will, direct and appoint, that if either of my children shall survive me and then die, never having been married, then and in such case (and in no other), he, she or they shall have after my death, the power of bequeathing his, her or their share of the said residuary personal estate, held in trust for them severally and respectively as aforesaid by any last will and testament, signed by their own hand, in the presence of two competent witnesses, to such person or persons as they shall think proper, and the trustee or trustees, for the time being as aforesaid, shall pay over the same to such legatee or legatees, whose receipt therefor shall be a full and sufficient discharge for such payment."

In the 15th clause: " And I further will, direct and appoint, that if either of my said children shall die either before or after

me unmarried and intestate, or if married, or having been married, without leaving any lawful issue living at the time of their respective deaths, then the share held in trust for such of my children respectively, as may so die as aforesaid, shall be equally divided by the said trustee, among my then surviving children, and the issue of any deceased child, such issue taking only the parents' share; the said accruing shares to be subject to all the trusts, limitations and provisions herein contained, respecting the said respective original share or shares."

Alexander Baring Bingham died in 1865 in England, which was his place of domicile, having never been married.

He left a will, which has been proved in Pennsylvania, and letters of administration c. t. a. have been granted to the Pennsylvania Company for Insurance on Lives, &c.

The will was, in part, as follows: "I, Alexander Baring Bingham, Esquire, second and only surviving son of the late William Bingham, Esquire, of Philadelphia and Paris, and Marie Charlotte Chartier de Lotbiniere, his wife, at present residing at Hatchett's Hotel, London, do hereby declare this to be my will. I give the sum of twenty thousand pounds sterling to the trustees of this my will, hereinafter named, &c., upon trust, to invest the same upon government and real securities in Great Britain or in the United States of America, or in the provinces of Upper or Lower Canada, or upon the guarantied stocks or securities of any colonial dependency of the British Empire, &c., * * * and to stand and be possessed of and interested in the said sum of twenty thousand pounds, &c., and the annual produce or income thereof and hereinafter referred to (as the said trust legacy) upon trust to pay the interest, dividends and annual produce thereof unto my nephew, William Alexander Baring Bingham, during the term of his natural life, and after his decease to stand possessed of the said trust legacy in trust for such son of my said nephew as shall first or alone may attain the age of twenty-one years, for his absolute use and benefit; but if my nephew shall have no such son who shall attain twenty-one, then, &c., * * * I give one thousand pounds sterling to each of the children of my sister Marie Louise Bingham, wife of Count du Bois Guilbert, Julia Charlotte Bingham, wife of Count du Douhet Romanges, and Georgiana Jelly Bingham, wife of Count d'Epremesnil, living at my decease, &c. * * * Part of my personal estate may be invested at the time of my decease in bonds, mortgages and other securities in the United States of America or in the province of Lower Canada. Now I authorize my trustees and executors hereinafter named to continue such investments as they shall think fit, &c. * * * I give, devise and bequeath all the rest and residue of my property, &c., * * * unto the trustees hereinafter named, &c., upon trust to manage, sell or lease my real estate at their discretion during the minority

[Bingham's Appeal.]

of my said nephew, and to collect and get in any part of my personal estate, &c., * * * and to stand possessed of and interested in such residuary real and personal estate and the annual income and proceeds thereof upon trust during the minority of my said nephew, to collect and receive the annual income thereof, &c., * * * and to stand possessed of and interested in my said residuary real and personal estate and any accumulations of the income thereof for the sole use and benefit of my nephew, the said William Alexander Baring Bingham absolutely. I authorize and empower my trustees during the minority of any legatee to pay any portion of the income of his or her bequest to the parent or other legally constituted guardian for his or her maintenance and education."

He appointed Alexander Hugh Baring and Henry Bingham Mildmay, of London, to be the trustees and executors of his will.

The account of the trustee was referred to Edward Olmstead and Peter McCall, Esquires, as auditors, to adjust the account and report distribution.

The claimants of the fund were the guardians of William Alexander Baring Bingham, who claimed that the will of Alexander Baring Bingham was an execution of the power under the will of William Bingham; and the surviving three daughters of William Bingham, who claimed that the will of Alexander was not an execution of the power, and that they, with W. A. B. Bingham, took under the 14th and 15th clauses of William Bingham's will.

The auditors decided that the will of Alexander B. Bingham was not an execution of the power, and awarded the fund to the daughters and grandson of William Bingham. On exceptions, the Orphans' Court (Ludlow, J.) confirmed the auditors' report. The guardians of William A. B. Bingham and the Pennsylvania Company for Insurance on Lives, &c., administrators c. t. a. of Alexander B. Bingham, appealed to the Supreme Court, and assigned the decree of confirmation for error.

*Strong*, for appellants.—The question as to the execution of a power is one of intention : Sugden on Powers 367 ; 1 Jarman on Wills 631 ; Thompson *v.* Garwood, 3 Wharton 287 ; McKonkey's Appeal, 1 Harris 259 ; Keefer *v.* Schwartz, 11 Wright 508 ; White *v.* Hicks, 43 Barbour 64. The law of the country where Alexander was domiciled is to govern : 2 Greenleaf Ev. § 671 ; Harrison *v.* Nixon, 9 Peters 503 ; Story's Conflict of Laws, § 479 a. ; Trotter *v.* Trotter, 4 Bligh (N. S.) 502 ; Anstruther *v.* Chalmer, 2 Simons 1 ; Thornton *v.* Curling, 8 Id. 308 ; Price *v.* Dewhurst, 4 Mylne & Craig 81 ; Burge Comm. on Col. and For. Law, pt. 2, ch. 9, p. 858 ; Boys *v.* Bedale, 1 Hem. & M. 805 ; Laurenville *v.* Anderson, 3 Swaby & Tristram 44 ; Hare *v.* Nas-

myth, 2 Addams Eccl. R. 25; Schultz v. Dambmann, 3 Bradford R. 377.

The English statute 1 Vict. c. 26, § 27, provides that "a bequest of the personal estate of the testator, or any bequest of personal property, described in a general manner, shall be construed to include any personal estate, or any personal estate to which such description shall extend (as the case may be) which he may have power to appoint in any manner he may think proper, and shall operate as an execution of such power, unless a contrary intention shall appear by the will."

Appointments under wills are construed as ordinary bequests: Harvey v. Steacy, 1 Drewry 127. The intention is to be gathered from the instrument executing the power, not from that creating it: Thompson v. Garwood, supra.

R. C. McMurtrie, for appellees.—The intent to execute must appear on the instrument: Wetherill v. Wetherill, 6 Harris 265; Andrews v. Emmot, 2 Brown Ch. C. 297; Jones v. Tucker, 3 Meriv. 533; 1 Sug. on Powers 385–9.

The testamentary instrument executing a power is part of that creating it: Commonwealth v. Duffield, 2 Jones 279; 1 Sug. on Powers 155, 156. Its validity is to be determined by the law of the donor's domicile: Tatnall v. Hankey, 2 Moore P. C. Cas. 342. A power is an agency for another's estate: Heffernan v. Addams, 7 Watts 121.

The opinion of the court was delivered, March 21st 1870, by

AGNEW, J.—It may be admitted that the intention of the donee of a power is the true criterion to determine its execution. But this intention must appear in the instrument itself. In Pennsylvania the rule is, that the instrument must refer to the power to be executed, or actually dispose of the subject of it: Wetherill v. Wetherill, 6 Harris 265; Thompson v. Garwood, 3 Whart. 287; Meconkey's Appeal, 1 Harris 259; Keefer v. Schwartz, 11 Wright 508; Commonwealth v. Duffield, 2 Jones 280; Heffernan v. Addams, 7 Watts 116. When the donee of a power refers to it, or when he disposes of the subject of it by such a description as identifies it, the intent to execute it is free from uncertainty. A third mode of ascertaining the intention is, when the instrument of execution cannot have any operation except on the ground that the donee intended to execute his power; as where it is a power to dispose of real estate and he has none of his own. It is manifest the third mode is rather a legal presumption than a manifestation of intention—a positive inference drawn from a negative fact. But positive legal presumptions cannot judicially arise upon equivocal or uncertain conditions of fact. Hence, the mere fact that the bequests in a will exceed the testator's estate cannot draw

after it an intention to execute the power.   The excess may arise from a mistaken estimate, or from changes in the testator's property—a mistake common to that numerous class who keep no accounts, or imperfect ones, of their affairs.   The evidence of this is the common occurrence of the abatement of legacies.   In the present case, Alexander Baring Bingham had a large estate of his own, too large to make the inference clear that he must have intended to execute the power contained in the will of William Bingham.   The auditors have reported no clear facts to sustain such a conclusion.   It is possible, but not certain, that he intended an execution of the power.   It must not be forgotten, when handling such a question, that we are dealing with the property of another, and not with that of the donee of the power.   In the donee it is but a trust, and those interested in the estate of William Bingham have a right to know that the will of their testator has been actually executed as he intended by the donee of his power.   Hence, they are entitled to certainties, not mere conjectures or possibilities.   The New York case of White *v.* Hicks, 43 Barb. 64, is entitled to no weight here.   Justice Sutherland admits that the English authorities, since the Revolution, are strongly against evidence of intention, *dehors* the instrument, and states the will in regard to personal property is, that you cannot look beyond the face of the will for an intent to execute the power. The question was one of evidence, and its character peculiar ; and, at the close of his opinion, he clearly derives his conclusion from local and in part statutory considerations in determining that the evidence of the intrinsic fact was properly received.

The will of Alexander B. Baring refers to his own estate, and none other.   When he says, " part of *my* personal estate may be invested at the time of my decease in bonds, mortgages and other securities in the United States of America," it is straining the words to say he meant not his own but the estate of William Bingham.

There is no reference whatever in any part of the will to any other estate than his own.   The estate of William Bingham he knew belonged to the United States, and was administered under authority there.   It was not likely to be removed out of the United States, and had he meant William Bingham's estate, the strong probabilities are he would have referred to it as being there.   As a question of interpretation, properly so called, it is impossible to infer an execution of the power from the will of Alexander B. Bingham.   This leads us to consider the effect of the statute of 1 Vict. c. 26, § 27, upon his will, Alexander then being domiciled in England.   It is doubtless in the power of the Parliament to say that a bequest of a testator's own estate shall be deemed to extend to the estate of another, over which the testator has a

[Bingham's Appeal.]

power, unless he express the contrary intention. But this effect is produced by operation of law, not by the words of the will. It is manifest that no possible judicial interpretation of the words "*my personal estate*" can make them mean the estate of another. It is simply a legal effect or operation of law by statutory construction which can do so. But where the *situs* both of the will containing the power, and of the property subject to it, lies beyond the domain of Parliament, it is evident that the statutory construction of the instrument of execution can have no operation upon it. That would be to subject Pennsylvania rights to English dominion. Whether a power contained in a Pennsylvania will over Pennsylvania property has been duly executed, is evidently a question of Pennsylvania law, and not that of a foreign country having no jurisdiction. The proof of this is the possession we have, and the right we are now exercising in determining the very question before us. The fallacy of calling it interpretation, if we should give effect to the statute of Victoria, is seen in this, that judicially we can take no cognisance of the statute. It must come to us in the form of proof of a foreign law, and the moment it comes in that form we perceive that we are not simply interpreting the will, but we are constructing for it a new meaning by virtue of a foreign statute.

The rule that the same interpretation of a will should be given in a foreign country which the will has in the place of domicile, is misapplied to this case. That is precisely the rule we are now applying, the will, the property and the domicile of William Bingham being within Pennsylvania, the law of this state must govern the interpretation both of the power and the execution of it. If this were a case of the execution of a power created by a British will, the statute of Victoria would govern the execution of the power, and we should have to say that Alexander B. Bingham's will was a good execution of the power. The exercise of Alexander B. Bingham's power of dominion over the property is necessarily regulated by the law which governs the subject of his dominion. It is not the estate of Alexander B. Bingham, but that of William Bingham, which is the subject of the exercise of the power, and its *situs* being here, it was therefore controlled by our law. The case was well decided by the learned auditors and the court below, and is therefore affirmed.