## Jones v. Mackie

460

*J. Melvin Kelley,* for plaintiff.

*Morton W. Stephens,* for defendant.

LITTLE, P. J., June 3, 1943.—Thomas I. Jones, a resident of this county, died testate on October 20, 1912. Among other bequests, he devised the life use of his real estate to his son, Walter R. Jones, together with power of disposition. Walter R. Jones died testate December 1, 1940, and by his will devised all his property to his sister, Rose Jones Mackie, defendant above. On June 6, 1941, Albert S. Jones conveyed by quitclaim deed all his right, title, and interest in the real estate of Thomas I. Jones, deceased, which is the subject matter of the dispute before us, to Sherman Jones, plaintiff above. Contention arose between the above parties concerning title to the real estate of Thomas I. Jones. A case stated, in which all parties joined, was filed in the orphans' court of this county and later withdrawn. The present issue was instituted in the court of common pleas on September 8, 1942. Argument was duly completed and all briefs filed on February 10, 1943. Reargument of certain matters involved was held on May 3, 1943. Upon agreement of counsel and order of court, the petition was amended June 1, 1943.

## Facts of the case

Thomas I. Jones devised the life use of his real estate to his son, Walter R. Jones, together with a power of disposition, as follows:

". . . I hereby however giving to my said son Walter R. Jones the power of disposition of said real estate, the use of which is so devised to him by Will limiting such power of disposition however to the wife and children of the said Walter R. Jones or to his brothers and sisters among any and all of the same in such proportions as he may see fit; but if no wife or children, brothers or sisters of the said Walter R. Jones shall survive him, then at his decease I direct that said real estate shall pass to and be divided among my next of kin under the Intestate Laws."

Walter R. Jones died testate, unmarried, and without issue, on December 1, 1940, and by the terms of his will did ". . . give, devise and bequeath all of my property real, personal and mixed and wheresoever situate, unto my sister, Mrs. Rose Mackie [above defendant], her heirs and assigns forever."

Mrs. Rose Mackie assumed possession of the real estate and, she having decided to dispose of the land, the present controversy arose. It is conceded that Walter R. Jones owned no other real estate at the time of his death or at the time his will was executed.

## Questions involved

Is the power of disposition contained in the will of Thomas I. Jones broad enough to make it a power of exclusion among members of a designated class?

Does the will of Walter R. Jones constitute a legal and valid exercise of the power of appointment contained in the will of Thomas I. Jones, sufficient to vest title in Mrs. Rose Mackie?

## Discussion

"A testamentary power is an authority conferred upon one or more persons by will, to perform after the testator's death, certain acts in relation to the subject matter of the gifts": Thompson on Wills (2d ed.), 479.

Powers of appointment to a class are exclusive or nonexclusive. They are exclusive when the donee has the right to exclude entirely any members of a designated class and appoint to such of the objects and in such shares as he may choose. A power to appoint is nonexclusive when no such right of selection or exclusion is granted, but the property must be distributed in such manner that all the appointees shall share some portion thereof: ibid, p. 491.

In the execution of this power of appointment, at common law, some reference to the power or to the property was necessary to a proper execution of the power, but where the power is not a limited one by section 3 of the Act of June 4, 1879, P. L. 88, and section 11 of the Act of June 7, 1917, P. L. 403, a general devise of all real estate in the will of the donee of the power is a legal and valid exercise of the power of appointment.

The will of Thomas I. Jones provides as follows: "I, Thomas I. Jones of the Township of Middletown, County of Susquehanna, State of Pennsylvania, being of sound mind and memory make this my last Will as follows:

"FIRST,—I give and bequeath to my beloved wife Elizabeth Jones the full and entire use of all my estate for and during the term of her natural life, meaning all of my real and all of my personal estate, provided that if she shall re-marry that then my estate shall at once pass as hereinafter provided:

"SECOND,—I have already given to my daughter Rosetta Four hundred Dollars, to my daughter Elizabeth Six Hundred Dollars, to my son Albert Eleven Hundred Dollars, and to my son Richard Four hun-

dred Dollars as advancements on what would have been their share and interest in my estate had I died intestate.

"THIRD,—I give and bequeath to my daughter Rosetta in addition to the sum she has already received the sum of Two Hundred Dollars; to my daughter Elizabeth in addition to the sum received by her heretofore the sum of Two Hundred Dollars; and to each of my two grandchildren, being children of my deceased son Richard, I give and bequeath Two Hundred Dollars.

"FOURTH,—And whereas, there is owing to me as purchase money from my son Albert S. Jones for real estate on land contract dated April 11, 1901, the sum of Seven Hundred Dollars and interest from date of contract; I hereby abate and discount from said contract any interest that may be in arrear at the time of my decease and direct my executor hereinafter named to execute and deliver a good and sufficient deed pursuant to said contract to my said son Albert S. Jones the land described therein, upon payment by the said Albert S. Jones to my executor the sum of Seven Hundred Dollars with interest only from the date of my decease, and that the said Albert S. Jones shall have two years immediately following my decease within which to pay the same.

"FIFTH,—I consider that I have heretofore in my lifetime given to my son Powell Jones sufficient to equal in full the share which he should have in my property and therefore have not named him as a beneficiary under this Will; and whereas, he is indebted to me I hereby extend the time of payment of any such indebtedness which may be due and owing from my son Powell Jones to my estate at the time of my decease two years from the date of my death within which period he shall pay the same principal and interest.

"SIXTH,—I give and bequeath all the rest and remainder of my personal property to my son Walter R.

Jones absolutely, and to him my son Walter R. Jones for and during the term of his natural life all my real estate, he however not to come into possession of the same until after the death or re-marriage of my said wife as previously mentioned in this Will, nor shall he have power to sell, mortgage or in any manner encumber the same, nor shall the said real estate or the income thereof ever be in any manner made liable for the payment of any debt that he may at any time contract or that he may now owe; I hereby however giving to my said son Walter R. Jones the power of disposition of said real estate, the use of which is so devised to him by will limiting such power of disposition however to the wife and children of the said Walter R. Jones or to his brothers and sisters among any and all of the same in such proportions as he may see fit; but if no wife or children, brothers or sisters of the said Walter R. Jones shall survive him, then at his decease I direct that said real estate shall pass to and be divided among my next of kin under the Intestate Laws.

"SEVENTH,—I hereby nominate and appoint my said son Walter R. Jones sole executor of this my last Will authorizing and empowering him to convey by deed or deeds any lands I may heretofore have sold by contract to the purchaser or purchasers thereof, their heirs and assigns the same as I could convey the same if living.

"In Witness Whereof, I have hereunto set my hand and seal this 18th day of June, 1909. . . ."

"Know All Men by These Presents that I, T. I. Jones of Middletown Township Susquehanna County and State of Pennsylvania being of sound mind memory and understanding but at present in feeble physical health, do hereby make, declare and publish this to be as a codicil to my last will and testament theretofore made.

"Codicil Item One. As a specific legacy, I hereby give and bequeath to my son Walter Jones a bond and mortgage, and all monies as shall be unpaid thereon, which

I now hold against V. J. Atwood of Pike Township Bradford County, Pennsylvania dated and acknowledged the thirtieth day of March, A. D. 1910, recorded in the Recorder's Office of Bradford County, Pa. the second day of April, A. D. 1910 in Mortgage Book No. 79, at page 178, to secure the payment of Thirty five hundred dollars and interest; for the sole use and behoof of my said son Walter absolutely.

"Codicil Item Two. I hereby revoke the provision of my last Will heretofore made requiring of my son Albert to pay other beneficiaries the sum of seven hundred dollars and direct that he my said son Albert have and receive the devises and bequests in my said will to him given and granted discharged from the said requirement and payment of seven hundred dollars.

"In all respects as modified and changed by this codicil, the provisions of my said last will heretofore made shall be and remain in full force and virtue.

"Witness my hand seal at Middletown Susquehanna County Pennsylvania this 27th day of April, A. D. 1912. . . ."

Our first duty is to approach the interpretation of this will by placing ourselves as nearly as is humanly possible in the position of testator (donor). His intent must be the pole star to guide us in our effort to ascertain the meaning of his language, and, once discovered, it becomes the duty of the court to translate it into actuality. The entire will must be considered. Recently, in Calder's Estate, 343 Pa. 30, 34, speaking through Mr. Justice Parker, the Supreme Court said:

"The intent of the testator as disclosed therein has always been held controlling in construing a will; the courts will seek to find that intent within its four corners: *Mereto's Estate*, 311 Pa. 374, 377, 166 A. 893. It is a fundamental rule applied in the construction of wills that the intent of the testator shall be determined from an examination of the very words of the will taken

as a part of an entire work and in the light of the circumstances under which it was written. In gathering the meaning of words and phrases and the sense in which they are used, the context and the will as a whole must be taken into account: *Smith's Petition*, 291 Pa. 129, 134, 139 A. 832." And again, in a per curiam opinion in Hemphill's Estate, 345 Pa. 451, 453:

" 'To effectuate the intention of a testator, the word "and" may be read "or". Attention need not be called to the numerous authorities to sustain this. Uncertainty is sometimes the result of the improper use of "or" for "and", or vice versa. The general rule in such cases is that the one word will be construed to have been used for the other, where the plain intent of the testator will be defeated without such substitution. . . .': *Tripp's Estate* (No. 1), 202 Pa. 260, 265. See also *Worst v. DeHaven*, 262 Pa. 39, 41; *Simpson's Estate*, 304 Pa. 396, 402; *Whitman's Estate*, 329 Pa. 377, 381."

For further cases on the duty of courts in interpretation of wills, see Prime's Petition, 335 Pa. 218, Elkins' Estate, 339 Pa. 193, Brennan's Estate, 324 Pa. 410, Bissell's Estate, 302 Pa. 27, French's Estate, 292 Pa. 37, Ludwick's Estate, 269 Pa. 365, Lonergan's Estate, 303 Pa. 142, 148, and McCarty's Estate, 138 Pa. Superior Ct. 415. But the Supreme Court said, in Golden's Estate, 320 Pa. 4, 7:

" 'Courts of justice will transpose the clauses of a will and construe 'or' to be 'and' and 'and' to be 'or' only in such cases when it is absolutely necessary so to do to support the evident meaning of the testator, but they can not arbitrarily expunge or alter words without such apparent necessity.' "

In examining the will of Thomas I. Jones in the light of the above decisions, it is important to note that in item 1 he provided for his widow; in item 2, he recited that he had already given sums of money to four of his children, including plaintiff's grantor ". . . on what

would have been their share and interest in my estate had I died intestate." In item 3 he gave to his daughter Rosetta (conceded to be above defendant) $200 in addition to the sum she had already received and to two of his grandchildren, children of a deceased son Richard, $200 each. In item 4 he abated and discounted interest due at the time of testator's decease from his son Albert (plaintiff's grantor) on a land contract and provided that his executor should give him a deed upon receipt of $700 and interest from date of testator's decease, giving Albert two years within which to pay it. In item 5, testator recites that he had given to his son Powell during his lifetime sufficient to equal his share in his estate and extended the time within which his indebtedness to his estate should be paid by a period of two years.

Testator had provided for each of his other children up to this point in the will or explained his reason for not doing so. In item 6, we come to the first mention of Walter R. Jones. There he devises all the remainder of his personalty to Walter absolutely and the life use of his real estate, Walter R. not to have possession of the same until after the death or remarriage of testator's widow.

The sixth item contains words and terms evidencing testator's intention to create an estate in the nature of a spendthrift trust to preserve the property for other members of his blood line. When testator reached this point in the will, it is plain that he believed he had equally and equitably distributed his property among his children and that he intended that the shares theretofore given were sufficient for each. Approximately three years later, he decided that he had not been quite fair with Albert and Walter, so in a codicil he increased Albert's share by $700 and gave Walter outright a mortgage due him (the testator) in the sum of $3,500.

Having given Walter the life use of his real estate, testator was faced with the problem of establishing its eventual settlement. He apparently decided that it

should remain in his blood line, and, after making certain that the real estate would remain intact, he said:

". . . I hereby however giving to my said son Walter R. Jones the power of disposition of said real estate, . . . limiting such power of disposition however to the wife and children of the said Walter R. Jones or to his brothers and sisters among any and all of the same in such proportions as he may see fit . . ."

An analysis of the above language reveals that it was not a general power of appointment; it was limited to a class. First, testator intended that if Walter married he could appoint his wife and children to receive the fee, or ("or" used here as a coördinating particle, connecting two series of words or propositions presenting a choice of either; see Webster's New International Dictionary), if he preferred that his wife and children should not have the title or in case he left no widow or children to survive him, he could then vest title in his brothers and sisters among any and all of the same in such proportions as he saw fit.

The language employed by the scrivener of donor's will creates a perplexing problem and testator's intent must be gathered from the following language: ". . . among any and all of the same in such proportions as he may see fit; . . ."; taken in conjunction with all other parts of the will. It is urged by defendant that a fair interpretation of the above establishes beyond question that donor gave his son Walter the power of exclusion; that the donor intended that Walter had the power to appoint any one or all of the brothers and sisters surviving. This contention is given considerable strength if we assume that he used the word "any" in one of its common, ordinary usages; for example, denoting one indifferently out of a number; one indiscriminately of whatever kind or number, and that he used the word "and" immediately following in place of "or". See Hemphill's Estate, supra. If we read this

clause with the assumption that testator actually said "any one or all of the same" it would appear that donor had intended that his son Walter could vest the fee in any one of the designated class. To adopt this interpretation, we are confronted with the necessity of overlooking both the ordinary use and the legal significance of the word "among", the frequently-applied legal meaning of the word "any", the transposing of other words and a complete disregard of the word "proportions".

We must study this context first, however, with the end in view of ascertaining donor's intent and purpose when he expressed his thoughts in the words before us. In Bailey's Estate (No. 1), 276 Pa. 147, the Supreme Court said (p. 151):

" 'In determining whether a power of appointment is validly exercised, consideration must first be directed to the intention of the donor as found in the instrument creating the power. The applicability of the rules of law, relating to the exercise of the power of appointment, is not to be measured solely by the particular class in which the power may be conveniently placed or wherein it may operate, *but from a consideration of the intent and purpose for which the power was created*, and whether its exercise expressly or impliedly violates the conditions laid down by the donor.' " (Italics supplied.)

Without adding to, or detracting from, the actual language used by the scrivener, who was a practicing attorney, we are of the opinion the testator's intent can be gathered within the four corners of his will. All the way through the will, up to this paragraph, the donor had meticulously provided fairly for each of his children, stressing the fact that he was providing a just share for each, as though he were to die intestate. He plainly declares that he does not want to favor one over the other. Then he gave Walter the power of disposing of the property at his death to one class, his wife and children, or to another class, his brothers and

sisters. Walter was never married and left no children, so we are dealing with the latter class only, and donor said the power of disposition must be limited among any and all of the same in such proportions as he (Walter) may see fit.

The word "among" suggests a division between more than two. The Supreme Court in Davis' Estate, 319 Pa. 215, 218, said:

"The use of the word 'among' naturally suggests that testatrix had in mind a division among a number greater than two, and that she was thinking of a distribution to several individuals rather than to two classes, for which the appropriate word would have been 'between': see Green's Est., 140 Pa. 253, 255; Ihrie's Est., 162 Pa. 369, 372; Ghriskey's Est., 248 Pa. 90, 93."

In Green's Estate, 140 Pa. 253, 255, the court said:

"It is fair to presume that the testator used the word 'between' in its usual, proper, and ordinary signification. See Hick's Est., 134 Pa. 507. Worcester gives as one of the definitions of the word, 'bearing relation to two; from one to another.' In explaining the difference of meaning between the two words, 'between' and 'among', he says 'between is used in reference to two things, parties, or persons; among in reference to a greater number.' Webster says that 'between' applies properly to only two parties." Also in Ihrie's Estate, 162 Pa. 369, 372:

"The word 'between' refers properly to two, and not more. It is true that it is not unfrequently used, especially by the uneducated, and colloquially, in the sense of 'among,' as referring to more than two objects. But that admittedly is not its correct use. The presumption is in favor of the proper and correct use of words . . ." See also Ghriskey's Estate, 248 Pa. 90, 93.

In Hildebrant's Estate, 268 Pa. 132, 135, the Supreme Court said:

"The same conclusion follows from the provision that the estate shall then be 'divided among' his relatives. 'Divided among' necessarily refers to a gift to more than two relatives . . ."

In Webster's Unabridged Dictionary, we find that the word "among" is used as "Expressing a relation of dispersion, distribution, etc. Also, a relation of reciprocal action. When among or amongst is used of the distribution of property among certain persons named, it properly implies that no one of those mentioned shall be excluded, but that each shall share in the distribution, and equally, unless there be something in the context showing a contrary intention."

We are not, therefore, either from a legal standpoint or from the standpoint of the common usage of the word "among", adopting a strained interpretation if we assume that testator intended that more than one should have a share. That he did not intend that all should share equally is clear from the context of the will when he gave Walter the power to state the proportions. We cannot see that the word "any" immediately following conflicts with this interpretation, as it is followed immediately by the words "and all of the same." When endeavoring to gain donor's intention from the words "among any and all", we are not permitted to draw the conclusion that he merely used meaningless words if any other construction will give them intelligent and proper meaning. See Irwin's Estate, 304 Pa. 200, 202. The word "any" is frequently used in connection with the words "and" and "all", as "any and all damages"—meaning all damages. It is reasonable to assume that testator intended these words to mean each and every of them, every one of the same, any one and all of the same (any in its emphatic sense).

"Word 'any' is a general word and may have diversity of meanings, its meaning in any particular case depending largely upon context and subject-matter of statute or instrument in which it is used. Catholic Or-

der of Foresters v. State, 271 N. W. 670, 676, 67 N. D. 228, 109 A. L. R. 979": 1 Words & Phrases (5th series) 413.

For other instances in which "any" is given the sense of "all" or "every", see Harper v. Consolidated Rubber Co., 284 Pa. 444, Glen Alden Coal Co. et al. v. Scranton City et al., 282 Pa. 45, 49, 3 C. J. 232, Chicot County v. Lewis, 103 U. S. 164, 167, Williams v. Ivory, 173 Pa. 536, 542, Peterson v. The Delaware River Ferry Co., 190 Pa. 364, 365, Buckwalter v. The Black Rock Bridge Co., 38 Pa. 281, 287, Commonwealth v. Wiswesser, 124 Pa. Superior Ct. 251, 265, and 3 Words & Phrases (perm. ed.) 532. We think testator employed the word "any" in this connection to convey his desire that each and all, any one of all, should share with the others if living. We can discover no reason for the use of the words "and all" unless we ascribe to testator an intention to give a share to all of them who were living at Walter's death.

". . . the word 'all' needs no definition; it includes everything, and excludes nothing. There is no more comprehensive word in the language, . . .": Cannon v. Bresch, 307 Pa. 31, 34.

The use of the word "proportions" in the plural, later in the same clause, convinces us that donor intended more than one to share. This is strengthened when we go further in the context where donor said, ". . . but if no wife or children, brothers or sisters of the said Walter R. Jones shall survive him, then at his decease I direct that said real estate shall pass to and be divided among my next of kin under the Intestate Laws." It is to be noted here that the donor did not mention a failure on Walter's part to make a valid legal appointment; rather he provided that if there were no brothers and sisters surviving the real estate should go to his next of kin. This would seem to add further weight to plaintiff's contention that donor intended all those surviving to share. We, therefore, believe it was the

donor's intention that Walter should have but a very limited power of disposition. Testator intended that he should have power to give it to his wife and children if he married and left issue or, upon failure of the first class, he could divide it among his brothers and sisters. We find no expressed intention that he was to have the power to single out any one of them and disregard any others who might be living at the time of his (Walter's) death.

We, therefore, conclude that the power of disposition here involved was non-exclusive and our answer to the first question must be in the negative.

Having answered the first question in the negative, it would ordinarily not be necessary for us to pass upon the second question, but, as counsel for all parties have earnestly requested that we do so, we will pass upon this aspect of the case as well.

The second question presents a much more difficult problem and the facts before us reveal a borderline case. Is the will of Walter R. Jones a valid and legal execution of the power of disposition, assuming that donor had given him an exclusive power of appointment? Throughout the entire will we find no reference to the power of disposition nor any description of the subject matter of the power and there is but one subject before us in passing upon the legality of the execution of the power by Walter R. Jones. Is the general bequest of all of his real estate to his sister, Mrs. Rose Mackie, a valid legal exercise of the power?

The burden of proof of showing that a general devise does not execute a general power of appointment is imposed by the statute in Pennsylvania on him who denies it: 91 A. L. R. 450; Thompson v. Wanamaker's Trustee et al., 268 Pa. 203. The effect of the Act of June 4, 1879, P. L. 88, was to change the burden of proof and place it upon the one denying that a general bequest was a proper execution of the power and the

Act of June 7, 1917, P. L. 403, sec. 11, does not change the burden. The answer to the problem before us is to be found in a determination of donee's intention when the general bequest was executed and the present operation in Pennsylvania of a general bequest in a will as an execution of a restricted power of appointment. These two elements of the issue are so closely related they will be considered together.

What was Walter R. Jones' intent when he made the general bequest contained in his will, which must be determined from an examination of the very words of the will, taken as a part of an entire work and in the light of the circumstances under which it was written? See Calder's Estate, supra. And a construction which makes every word operative is to be preferred: ibid, pp. 37, 38. The will must be examined in the light of certain principles established by a long line of decisions that three classes of cases have been held to be sufficient demonstration of intention to execute a power: First, where there has been some reference to the power; second, where there has been a reference to the property which was the subject on which it was to be executed; third, where the instrument of execution would have no operation whatever except as an execution of the power. The application of these rules of intention has solved many cases: Wetherill v. Wetherill, 18 Pa. 265, 271.

" '. . . When the donee of a power refers to it, or when he disposes of the subject of it by such a description as identifies it, the intent to execute it is free from uncertainty' ": Neill's Estate, 222 Pa. 142, 145; and for a further discussion of these rules see Hupp v. Union Coal & Coke Co., 284 Pa. 529, 534, wherein the court said:

"Whether the power has been executed, is a matter of the donee's intention; that is the true test. It may appear by express terms, recitals or necessary implication. It was early held that the intention to execute the

power must be so clearly manifested in the act of execution that it is impossible to impute any other (Andrews v. Emmot, 2 Bro. C. C. 297, 29 Repr. 162; Doe D. Nowell v. Roake, 2 Bing. 497, 130 Repr. 398, reversed, 5 B. & C. 721, 108 Repr. 268, which was affirmed 6 Bing. 475, 130 Repr. 1364), and this intention should appear in the instrument: Bingham's App., 64 Pa. 345, 349. A classification was then made whereby the intention to execute was said to be clearly manifested: (1) By a reference to the power in the executing instrument. (2) By a reference to the property on which the power was to operate. (3) Where the instrument of execution would have no operation except as an execution of the power: Wetherill v. Wetherill, 18 Pa. 265, 271; Bingham's App., supra, 349. Such intent is not to be presumed from the mere grant of a larger estate, though that circumstance, coupled with others, will be sufficient upon which to base a presumption of its exercise: nor should positive legal presumptions judicially arise on equivocal or uncertain conditions of fact: Bingham's App., supra. In Scott v. Bryan, 194 Pa. 41, 45, where the question was as to the execution of power of sale, the appointee having a life estate, Justice Mitchell said: 'The general rule in determining the validity of the execution of powers it that the intention of the donee to execute is the turning point. Such intent will not be presumed from the mere grant of a larger estate than the grantor possessed but it may be gathered from such grant coupled with other evidence . . . The grantor in the deed had no estate which she could convey, and therefore her deed could not be made operative except as an execution of the power. Under all the cases this is conclusive evidence of her intent to exercise the power: Wetherill v. Wetherill, 18 Pa. 265; Bingham's App., 64 Pa. 349.'

"Where a power of sale is executed by deed without reference to the power, it is effective as such if it

would otherwise be a nullity; for example, in Lancaster v. Dolan, 1 Rawle 231, 248, the power was to appoint and the donee gave a mortgage without reference to the power. Of similar import are Coryell v. Dunton, 7 Pa. 530; Keefer v. Schwartz, 47 Pa. 503. In Allison v. Kurtz, 2 Watts 185, it was stated that powers executed by deed or will need not refer to the instrument creating the power if the act done cannot take effect but by virtue of the power. A conveyance by an executor with power to sell is construed to be an execution of the power contained in the will, although that power is not recited. The law, which mainly regards the design and object of the parties, will not suppose them to do a vain and useless thing; but, if there be any other way in which their design can take effect, it shall be deemed to operate in that way.

"In Jones v. Wood, 16 Pa. 25, which was the case of a donee of a power to sell land possessing also an interest in the subject of the power, it was said, p. 42, 'A conveyance by him (the donee), without actual reference to the power, will not be deemed an execution of it, except there be evidence of an intention to execute it, or, at least, in the face of evidence, disproving such an intention; but where the donee has no estate in the premises, and his conveyance can only be made operative by treating it as an exertion of the power to sell, it will be so considered.' "

There being no reference to the power and no description of the property covered by the power in the will before us, we look to class three of the cases above in order to ascertain the intention of Walter R. Jones with reference to the power. May we infer his intent to execute the power from the fact that his will would have no operation except as an execution of the power? The intent is not to be presumed from the mere grant of a larger estate, nor should positive legal presumption judicially arise on equivocal or uncertain condi-

tions of fact: Hupp v. Union Coal & Coke Co., supra; Bingham's Appeal, 64 Pa. 345, 349; it may be gathered, however, from the grant of a larger estate coupled with other evidence: Scott, Exec., v. Bryan, 194 Pa. 41. This case, Wetherill v. Wetherill, supra, and Bingham's Appeal, supra, are all authority for the principle that where a grantor in a deed had no estate which could be conveyed the deed could not be made operative except as an exercise of the power. Further, see Lancaster v. Dolan, 1 Rawle 231, 238, Coryell v. Dunton, 7 Pa. 530, Keefer v. Schwartz, 47 Pa. 503, and Allison v. Kurtz, 2 Watts 185, wherein it was stated that powers executed by deed or will need not refer to the instrument creating the power if the act done cannot take effect but by virtue of the power. See also Jones v. Wood, 16 Pa. 25.

The third class of cases recognized in the rules for ascertaining donee's intention was again referred to with approval in Thompson v. Wanamaker's Trustee et al., supra, where the court said (p. 210) :

"Both English and American authorities sustain the position just stated. In Pepper's Will, 1 Parsons 436, 442, decided in 1850, President Judge King held: 'Where one possessing a power to dispose of real estate by his last will, and having no other real estate except that for which he possesses the power, devises generally all his real estate, such devise is deemed to have been made in execution of the power, although such power is not specially referred to, and although the particular real estate embraced in the power is not specially described in the devise.' This case has been cited as an authority, upon other points contained therein, by both the Supreme and Superior Courts: See Bethlehem Borough v. Perseverance Fire Co., 81 Pa. 445, 457, and Roger's Est., 31 Pa. Superior Ct. 620, 622.

"The principle asserted by Judge King is recognized by us in Bingham's App., 64 Pa. 345, 349, where, prior to the Act of 1879, we said: 'The intention of

the donee of a power is the true criterion to determine its execution . . . and a mode of ascertaining the intention is, when the instrument of execution cannot have any operation except on the ground that the donee intended it to execute his power, as [for example] where there is a power to dispose of real estate and he [a testator who undertakes to will real estate] has none of his own,' or, as in the present case, none other than that which he had placed in trust subject to his power of disposal. Also see the reference to the law as it was before the Act of 1879, supra, in Pa. Co.'s Account, 264 Pa. 433, 436a.

"Turning to the English cases, in Lake v. Currie, 2 De G., M. & G. 536, 547, where testator, when he made his will, had no real estate to devise except certain properties over which he possessed a power of appointment, Lord St. Leonards said: 'It is clearly settled that a general devise or bequest will not, independent of the late statute [which is similar to our Act of 1879], operate as an execution of a power; but it is also settled that where a testator disposes of real estate, not having any other than what is subject to the power, he is in such case to be taken as dealing with that estate.' See also Standen v. Standen, 2 Vesey, Jr., 589; and additional authorities could be cited."

In this case, however, donor's real estate had been conveyed by him to a trust company, subject to donor's life use, upon a further trust after his death to hold the real estate for such person or persons, and for such uses and purposes as the said Thomas B. Wanamaker by any last will or writing in the nature thereof might appoint. In his will the general bequest referred to was in the following language:

"All the rest, residue and remainder of my estate, real and personal, of what kind or character soever, and wheresoever located, I dispose of as follows . . ."

Testator, in the deeds of trust aforementioned, had reserved to himself the right to sell or dispose of the

real estate as he might see fit and power to change or annul the trusts in relation thereto and at his death to disposed of it as he might appoint. It was held by the court below that the general devise of real estate operated as an exercise of the power of testamentary disposition he had reserved to himself by deeds of trust and that the widow was entitled to the one-third interest in the real estate she had received in the bequest of the residue of the estate. The general bequest was sustained by the Supreme Court, not only by reason of the fact that he had no other real estate but due to the fact that he, the grantor in the trust deeds, had reserved to himself the right to appoint the final owners. Not only had he reserved a general power of appointment to himself but he was actually disposing of his own real estate, completely under his own control. This case is authority for the principle that (p. 210):

" 'Where one possessing a power to dispose of real estate by his last will, and having no other real estate except that for which he possesses the power, devises generally all his real estate, such devise is deemed to have been made in execution of the power, although such power is not specially referred to, and although the particular real estate embraced in the power is not specially described in the devise.' "

It must, nevertheless, be considered in the light of the facts involved. In the first place, the Supreme Court stated that this constitutes an exercise of his reserved right of testamentary disposition "and this without regard to the Act of June 4, 1879, P. L. 88". The facts there were so clear it was not necessary to invoke the statute. Here again the power of appointment was general and this decision is not determinative of the issue before us. The donee there was exercising the general power he had given to himself. He was the actual, though not titular, owner of the property and there could be no doubt of his intention.

Here, on the other hand, while it is true that there was no other known real estate of donee, we cannot in good conscience say that the general bequest before us operates, ex necessitate, upon the property in question.

A review of the facts in most reported cases reveals but very few where an execution of a limited power by a general bequest was sustained upon the theory that the instrument would become inoperative unless declared a valid exercise of the power or by virtue of the statutes above referred to. In Lafferty's Estate (No. 1), 311 Pa. 455, the court held that a limited power of appointment may be exercised without direct reference to the creating power, by a clause which names all the members of the permitted class as beneficiaries, yet in the same opinion again insisted that the Act of June 4, 1879, P. L. 88, refers only to unrestricted powers of appointment and at page 464 said:

"Apart from what this court may have decided in Lafferty's Est., 209 Pa. 44, and Lafferty's Est., 230 Pa. 496, as to this particular restricted power, we have held that a limited power may be exercised without direct reference to the creating power, by a clause which names all the members of the permitted class as beneficiaries. This was done in Francis Lafferty's will as to the share now in dispute. See Lloyd v. Fretz, 235 Pa. 538, and Darling v. Edson, 4 Pa. Superior Ct. 498. Lafferty's Est., 209 Pa. 44, is an authority for the same proposition."

In Darling, Exec., v. Edson et al., 4 Pa. Superior Ct. 498, above referred to, we find a power of appointment, as the one before us, limited to a class, but in that case the donee of the power devised the real estate to two of the class, requiring them to pay sums of money to the others, and charged the same on the land as quasi-purchase money. Hence the execution of the power was sustained, as all members of the class received some share of the property appointed.

In Lloyd v. Fretz, 235 Pa. 538, the court held that a power of appointment may be validly exercised without a recital thereof or direct reference thereto. In that case there was a power of appointment limited to a son and a stepson as a class in such shares as donee should see fit. He gave one fourth of the real estate to the son and $5 to the stepson as his full share. The property to be disposed of was one fourth of donor's estate. Here again, all members of the class received some part of the estate.

In the Lafferty case, supra, the Supreme Court referred to "This particular restricted power", which led the lower courts to the conclusion that the Supreme Court did not intend this principle for general application but rather restricted it to the particular facts of that case, and when the opinion is studied the conclusion is inescapable that a different result might have been reached had the donee restricted the gift to a lesser number than all of the class. Recognizing this fact, the court again in Biddle's Estate, 333 Pa. 316, at page 318, swept aside all doubt when, in referring to Lafferty's Estate, supra, Mr. Justice Schaffer, speaking for the court, said:

"In that case, we did intend to establish the general principle that a limited power of appointment may be exercised without direct reference to the creating power, by a clause which names all the members of the permitted class as beneficiaries. We can see no sound reason why the rule applicable to general powers, that a gift of the residue is an exercise of the power without reference to it, should not apply to limited powers, where the residue is given to all the members of the designated class among whom the power could be exercised."

The Supreme Court has not established the principle that a limited power of appointment has been validly executed by a donee through a general bequest

of his real estate where he fails to refer to the appointive power in his will, and selects one or more but not all of the limited class for portions of his bounty. In Baker's Estate, 17 Dist. R. 515, the court specifically held that a special or limited power must be exercised as before the Act of 1879 was passed, by some special reference to it. See also Garman v. Glass, 197 Pa. 101, 104, and Loughran's Estate, 22 Dist. R. 282. From all the authorities we have read touching upon the question, with reference to this particular restricted power and the instrument purporting to exercise the power, we conclude that the common-law rule still in force in Pennsylvania would control. The fact being that only one member of the class was appointed and there being so much doubt as to whether or not the power of appointment was exercised by the donee, it seems just that the rule should be applied to the circumstances in the case at bar. The purpose of the rule was to guard against the loss of inheritance where there was no reasonable assurance that the donee of a power intended to exercise it.

In Wilbur's Estate, 334 Pa. 45, 53, it was said: "A life tenant with a general power of appointment has an estate tantamount to a fee; no one but the donee has any interest in such a power . . ." Consequently, great liberality in the interpretation of wills of decedents possessing such powers of appointment has been allowed by statute where there was no reference to the power and no description of the property. This has been extended by the Supreme Court to apply to cases where the power was not general but all members of the class were appointed in donee's will to prevent obvious injustice and a defeat of the original donor's intention. Here, there was no general power of appointment, Walter R. Jones did not have an estate tantamount to a fee, and all the members of the class

had a contingent interest in the real estate. The real estate involved actually is a part of the estate of the original donor, who was the one to prescribe the person by whom and the manner in which those to receive it should be determined. The situation is akin to that in Bingham's Appeal, supra, where even though the power was a general one and no reference was made to it in the donee's will, the Supreme Court said (page 350) :

"It is possible, but not certain, that he intended an execution of the power . . . In the donee it is but a trust, and those interested in the estate of William Bingham have a right to know that the will of their testator has been actually executed as he intended by the donee of his power. Hence, they are entitled to certainties, not mere conjectures or possibilities."

In his will, Walter R. Jones provided, first, that his debts be paid. In item second, he said:

"I give, devise and bequeath all of my property real, personal and mixed and wheresoever situate unto my sister, Mrs. Rose Mackie, her heirs and assigns forever."

It is to be noted that there is no reference to the power of appointment contained in his father's will. We fail to find any description of the property subject to his power of appointment and, lastly, we find that he appointed but one member of the restricted class so we are without any case which offers a controlling parallelism to the matter before us. We are to look to the will of Walter R. Jones within its four corners and the circumstances surrounding him when the will was drawn in order to extract the positive inference from equivocal conditions of fact; the positive inference that he intended to exercise the power of disposition of his father's real estate when he gave all of his property to his sister, Mrs. Rose Mackie (admittedly one of the restricted class), and did not refer

to the power and did not describe the real estate in question. It is admitted in the agreed statement of facts before us that Walter R. Jones did not own any real estate except the life use of that of his father. Yet we find nothing in the will, executed several years before his death, to guide us to knowledge of his intent as to whether he referred to that real estate he was occupying as a life tenant or any real estate which he might own at the time of his death. Had this decedent appointed all the members of the class, the Act of 1917 would operate to pass the fee, or on the other hand, assuming the power of appointment was an exclusive one, had he referred to the power and then appointed this sister, we would not hesitate to vest the title in her, but we are without a rule or the necessary facts to convince us whether the donee intended to exercise the power or let the real estate pass to his brothers and sisters or to his father's next of kin as his father had directed upon Walter Jones' decease. It may clearly have been Walter R. Jones' intention that he was carrying out the power of appointment when this will was drawn but, if so, in expressing it he left the courts but one means of determining that fact and that is to guess at it. The wisdom of the legislature in limiting the effect of the Acts of 1879 and 1917 to general powers and that of the Supreme Court in permitting limited or restricted powers of appointment to vest title through the statutes only where all members of the restricted class are mentioned where the power of appointment is not referred to in donee's instrument, be it a deed or a will, is readily apparent when applied to the facts of this case.

We might have an idea that Walter R. Jones did intend to exercise this power but we cannot sustain it from the whole will, either by the facts as they existed at the time the will was drawn or by the law as laid down in the numerous decisions above quoted. Not only

does this will fail to fulfil the requirements of the first two classes of cases establishing rules to determine a testator's intent but it cannot be sustained by the third class. This will is not rendered inoperative if it be not construed as a valid exercise of the power. Walter R. Jones received personalty from his father and had some property besides his interest in the real estate in question. This we learn from the exhibits in evidence. On the whole, it is just as reasonable to assume from all the facts and instruments before us that the donee here intended to let title vest in his father's next of kin as it is to assume that he intended to use the power, and such a construction does not render his will inoperative.

We have given the matter before us grave consideration and study in order not to thwart any expressed intention of testator, Walter R. Jones, but we fail, first, to find any expressed intent to exercise the power and, secondly, to find any solid ground upon which we may sustain his will as a valid legal execution of the power by implication of law, and this title must vest as provided in the donor's will upon the decease of Walter R. Jones.

While it is true, as has been mentioned in several cases we have read, the donee had used the farm so long he had come to think of it as his property and might have been referring to it as "my property" when he made this bequest to Mrs. Rose Mackie, we still come back to the same point from which we started—a lack of substantial grounds within the will upon which to establish this inference as a conclusion. As neither wife nor children survived him, Walter R. Jones is simply the conduit through which title flows to those designated by donor to take, and his directions must be implicitly followed. All the members of the limited class before us are interested in the real estate. They have a definite right to know whether Walter R. Jones

executed the power of appointment as his father, the original donor, intended. Possibilities, conjectures, or doubt do not meet the test; an affirmative conclusion can be based only on a clearly-expressed intent, which we are unable to find within this will.

Having reached the conclusion that the power of disposition has not been legally exercised, it remains for us to decide where the fee will come to rest. This is determined by an inspection of donor's will and, after limiting the class, we find that he used the following language:

". . . but if no wife or children, brothers or sisters of the said Walter R. Jones shall survive him, then at his decease I direct that said real estate shall pass to and be divided among my next of kin under the Intestate Laws."

A study of this phraseology convinces us that testator intended the fee to vest in the next of kin only on one condition: namely, that Walter R. left no brothers or sisters, or members of his own immediate family surviving, and at the death of Walter R. Jones, Albert and Rose were the only living children of the donor and it is our conclusion that they receive the fee.

The donor's principal concern throughout the will was his children. In but two instances did he provide for anyone else. He gave $200 each to two children of a son who died before the will was drawn and he gave Walter the power to appoint his wife and children. It was only after there was no possibility of vesting title in any of his children that donor began to think of his next of kin.

Testator used the word "then", referring to the time of Walter's decease, as the occasion for determining who should take his real estate. Whether the word "then" is used as an adverb of time or as a word merely indicating the event (2 Jarman on Wills (6th Am. Ed.)

993), the result is the same. The next of kin were to share his real estate only in case no brother or sisters survived Walter. We think testator here intended a gift to a class and from the words ". . . but if no wife or children, brothers or sisters . . . shall survive him . . ." we think he intended the survivors to take rather than the survivors and the legal representatives or issue of those who died between the time of donor's death and that of Walter R. Whether a gift is to a class or to individuals constituting a class depends, of course, upon the intention of the testator as indicated by the language of the will: Billing's Estate (No. 1), 268 Pa. 67, 70. The nature of the implied gift before us does not violate the description of gifts to a class as set forth in that case nor does it fail under the test set forth in Sharpless' Estate, 214 Pa. 335, differentiating gifts to individuals from gifts to a class. In Haskins v. Tate, 25 Pa. 249, it was held that the members who are to constitute the class are to be determined at the time of distribution. The donor here limited the class, the number is uncertain at the time of the gift and is to be ascertained at the time Walter R. appoints. We think this is a gift to a class even though we may not say the share of each was dependent upon the ultimate number, as Walter was given the power to name the ultimate proportions. His failure to do this renders the shares of the takers dependent upon the ultimate number. For other cases pertinent, see Denlinger's Estate, 170 Pa. 104, Harrison's Estate, 202 Pa. 331, 335, Brundage's Estate, 36 Pa. Superior Ct. 211, Herman's Estate, 90 Pa. Superior Ct. 512, 516, and Wood's Estate, 321 Pa. 497, 500. In the latter case it was held that where a member of a class dies without issue before the time for principal distribution, the share of the member falls in and, in the absence of a contrary intent, increases the shares of the surviving members of the class, who therefore take in preference to the

personal representatives of the deceased members. That the result must be the same where the deceased member leaves issue but where the testator has not indicated an intent that distributees shall upon death be represented by living issue is clear. We find no words in the will before us to indicate that the testator intended the survivors of deceased brothers or sisters or their legal representatives to take if any brothers and sisters survived Walter R. Jones. We have searched diligently to find some authority in Pennsylvania which would be determinative of the matter before us in an effort to carry out what we believed to be the clearly-expressed intention of this testator. We have looked in all the textbooks at our disposal, and in 41 Am. Jur. 873, under the subject of "Powers" in §93, we find the following:

"Ordinarily, as a reasonable construction of the instrument creating a power in trust to appoint by will only among a class, the court, in distributing the property for want of a valid, or any, appointment, will ascertain the membership of the class as of the donee's death, particularly if the donee held a life estate in the property to be appointed"; and in A. L. I. Restatement of Trusts 89, §27, under "Special Power of Appointment":

"Where a power is conferred upon a person to distribute property to or among the members of a definite class, a trust in favor of the members of the class is created if, but only if, the donor of the power manifests an intention to create such a trust"; and under the heading of comment in the same section, para. (a):

"Where a power of appointment among the members of a definite class is conferred upon a person, it is a question of interpretation whether the donor intended to make it optional with the donee to exercise the power and intended that the members of the class should take only if he should exercise the power, or whether he

intended that the members of the class should take at all events.

"Where such a power is conferred and the donee fails to exercise it, the members of the class are not entitled to the property, unless the donor manifested an intention, either (1) to impose upon the donee a duty to make an appointment and not merely to confer upon him a power to appoint; or (2) to make a gift of the legal or equitable interest in the property to the members of the class in default of appointment." Under "Duty to exercise power" in comment (b) it is said:

"Where the donor manifests an intention to impose a duty upon the donee to exercise the power, and not merely to confer the power upon him, the donee is trustee for the members of the class; and if he fails to exercise the power, the members of the class will be entitled to the property in equal shares." It is said under comment (d) in determining the donor's intention:

"Whether the donor manifests an intention to impose a duty upon the donee to exercise the power, or merely to confer the power upon him, is a question in each case of the interpretation of the language used by the donor in the light of all the circumstances. In determining the intention of the donor the following circumstances are or may be of importance: (1) whether there is an express or implied gift over in default of appointment; (2) the imperative or precatory character of the words used; (3) the relations between the parties." Among the examples in this paragraph where the instrument of transfer creates a trust is one which we may say covers the case before us, and that is found on page 93, comment (d), where it is said:

"Where the members of the class are in such relation to the donor of the power that it would be natural

for him to make provision for them, it is easier to find a trust in their favor or a gift over to them in default of appointment, than it is where they are not so related to him."

We think the donor here intended, though he did not provide in specific words, that if the donee should fail to exercise the power the members of the class who survived should be entitled to the property in equal shares, and this would indicate an affirmative answer to another of the tests indicating an intention to create a trust in Walter R. Jones. We may not say, however, that the imperative or precatory nature of the words used indicates a trust. Under comment (d) of this same section on page 92, we find the following:

"So also, if he merely provides that the transferee shall have 'power' to appoint or distribute the property to or among the members of a class, the inference is that he does not intend to create a trust, but in such a case the instrument of transfer will generally be interpreted as making an implied gift over to the members of the class in default of appointment; other circumstances may exist, however, from which it will appear that the transferor did not intend the whole class to take if the transferee should fail to exercise the power." The use of the language ". . . but if no wife or children, brothers or sisters of the said Walter R. Jones shall survive him, . . ." leads us to the conclusion that the donor here used words in the instrument indicating that only the survivors of the class should take.

It is quite evident the donor intended that the power of disposition imposed in Walter R. could only be exercised by will and, in comment (g) to §27 of A. L. I. Restatement of Trusts 95, it is said:

"If the power could have been exercised only by the will of the donee of the power, such members of the class and only such members are entitled to share in

the property as compose the class at the time of the death of the donee of the power, since the donee could have effectively appointed only to members of the class in existence at the time of his death."

It would seem that that principle could be applied to the will before us. Whether Thomas I. Jones intended to create a trust in Walter R. or not, he clearly indicates that he intended only the survivors of the brothers and sisters to share. See also Hogg's Estate, 329 Pa. 163.

Our conclusion as to the final disposition of this property may be sustained on entirely different grounds when the language used by the scrivener of this will is viewed purely from the standpoint of common sense. Is it not a fact that the donor has written his own decree of distribution? If this is a fact, it is our duty to follow that decree: see Rzedzianowski's Estate, 148 Pa. Superior Ct. 361, 372. Testator said that, at the time of Walter R.'s death, if no brothers or sisters survived, the real estate was then to be divided among his next of kin under the intestate laws. We have a right to assume that testator and the scrivener of the will knew that the next of kin would be his grandchildren. It is clear that testator did not want any of his next of kin or the legal representatives of any deceased children to receive this real estate if any brothers or sisters remained after Walter died and, while he did not mention the possibility of Walter's failure to appoint, he clearly expressed the intention that his surviving children should share the real estate, and throughout the entire will it is evident that his greatest concern was to provide for his own children. We find a clearly-expressed intention that the takers among the class were to be determined at Walter's death and in vesting the title to this real estate in Mrs. Rose Mackie and Albert Jones, the two surviving children of donor and the only brothers and sisters sur-

viving Walter R. Jones, we are confident that we are carrying out and fulfilling the intention of Thomas I. Jones, the original donor.

### Order of court

And now, to wit, June 3, 1943, we enter judgment upon the present petition for declaratory judgment that the said Rose Jones Mackie and Albert Jones, the only surviving brothers and sisters of Walter R. Jones, each acquired an estate in fee simple of an undivided one half of the 255 acres of real estate described in the said petition and that the undivided one-half interest of Albert Jones is now vested in his son Sherman Jones, by conveyance. Costs of this proceeding to be equally divided between plaintiff and defendant.